**Russell FROYSLAND, Plaintiff and Appellant,**

v.

**Bernard ALTENBURG, M.D., and Fargo Clinic, Ltd., a Professional Corporation, Defendants and Appellees.**

Civ. No. 880206.

Supreme Court of North Dakota.

April 19, 1989.

Dickel, Johannson, Taylor & Rust, Crookston, Minn., for plaintiff and appellant; argued by Kenneth F. Johannson, Crookston, Minn.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellees; argued by Jane C. Voglewede, Fargo.

MESCHKE, Justice.

Russell Froysland appealed from a summary judgment dismissing his medical malpractice claim against Dr. Altenburg and Fargo Clinic as barred by the statute of limitations. We affirm.

Froysland had successful open-heart surgery at St. Luke's Hospitals on August 24, 1983. Dr. Devig performed the surgery. Dr. Altenburg administered anesthesia. Both were from Fargo Clinic.

After surgery, Froysland experienced pain and numbness in his right arm and hand from compression of the ulnar nerve. His surgeon had warned him that these symptoms were a possible complication of the surgery which usually ended within a couple of months. Froysland's symptoms did not.

In August 1984, Devig referred Froysland to Dr. Habinger, who was not a Fargo Clinic physician. Habinger recommended surgery on the ulnar nerve in his right arm. In early September 1984, Froysland, believing his problem was related to his heart surgery, sought financial assistance from St. Luke's Hospitals. The hospital's insurer denied his claim.

On October 5, 1985, Froysland had surgery on his right arm for the ulnar nerve complication. His anesthesiologist was again Dr. Altenburg of the Fargo Clinic. His surgeon, Dr. Johnson, along with Habinger, had joined Fargo Clinic in March 1985.

Froysland sued Dr. Devig, his heart surgeon, and St. Luke's Hospitals on September 11, 1986. The trial court determined that there was no genuine issue of material fact about Froysland's knowledge of his injury, of its cause, and of the possible

negligence of those defendants by early September 1984. The trial court concluded that Froysland's claim was barred by the two-year statute limiting malpractice claims, NDCC 28-01-18, and dismissed his claim by summary judgment on December 9, 1986. We summarily affirmed under NDRAppP 35.1(a)(6) and (7). *Froysland v. St. Luke's Hospitals,* 408 N.W.2d 742 (N.D. 1987).

Meanwhile, on November 18, 1986, more than three years after the heart surgery, Froysland also sued Altenburg and Fargo Clinic. He claimed that Altenburg, as the anesthesiologist for his heart surgery, negligently caused his injury.

Altenburg and Fargo Clinic took the position that Froysland's claim against them was also time-barred and moved for summary judgment. Froysland argued that he did not discover that the anesthesiologist was responsible for padding and protecting his arm during the heart surgery until his attorney discussed it with a medical consultant. According to Froysland, until then his knowledge was incomplete and discovery had not occurred. Froysland also contended that, under a continuous care concept, the statute of limitations ran from when Altenburg was his anesthesiologist for the second surgery and from when Johnson, his neuro-surgeon then at Fargo Clinic, last treated his arm after the second surgery. The trial court, based on the record in *Froysland I* and unmoved by Froysland's additional arguments, granted summary judgment on the second malpractice claim as well. In doing so, the trial court declared that the "continuing care concept has not been adopted in North Dakota."

On appeal, Froysland reiterated his arguments about continuous care and discovery to avoid the two-year statute of limitations.

### DISCOVERY

■ Medical malpractice actions must be commenced within two years of the discovery of the act or omission of alleged malpractice. NDCC 28-01-18(3).[1] This limitation begins to run "when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence. (Citations omitted)." *Wall v. Lewis,* 393 N.W. 2d 758, 761 (N.D.1986).

Froysland argued that the limiting time did not begin until his attorney, by consulting an expert on operating room procedure, realized that it was the anesthesiologist who was responsible for padding his arm during heart surgery. Froysland argued that it was not until then that he had reason to know of Altenburg's "possible negligence."

■ Knowledge is an objective standard, not a subjective one:

"[T]he focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be *subjectively* convinced that he has been injured and that the injury was caused by the defendant's negligence." (Emphasis added). *Wall v. Lewis, supra* at 761.

Froysland knew his injury was related to his first surgery when he sought financial aid from the hospital by early September 1984. He knew, or had reason to know, that someone associated with that first surgery was responsible. At that point, he knew of the injury, of its cause, and of the possible negligence; he had only to identify all who were involved in the operation. He had ample time to do so within two years thereafter. Discovery requires the exercise of reasonable diligence. *Anderson v. Shook,* 333 N.W.2d 708 (N.D.1983).

1. The relevant part of NDCC 28-01-18 says:
   "*Actions having two-year limitations.* The following actions must be commenced within two years after the claim for relief has accrued:

   \*   \*   \*   \*   \*   \*

   "3. An action for the recovery of damages resulting from malpractice; provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital. This limitation is subject to the provisions of section 28-01-25."

Froysland argued that discovery is a question of fact to be developed at trial. "A malpractice plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment, (citation omitted), but the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion." *Wall v. Lewis, supra* at 761. The only conclusion reasonable minds could draw is that Froysland knew of his injury, its cause, and the possible negligence of a member of the first operating team by early September 1984.

The discovery rule seeks to assure that the statute does not begin to run until a lay person with reasonable diligence becomes aware of a potential claim. But, as a matter of law, the discovery cannot reasonably be delayed until the injured person consults an attorney. To extend discovery to a time of consultation with an attorney would make the two-year limitation meaningless. By his unequivocal conduct, Froysland demonstrated that he had discovered his potential claim when he approached St. Luke's Hospitals in September 1984. Over two years more elapsed before Froysland sued Altenburg and Fargo Clinic. Therefore, his claim was time barred.

## CONTINUOUS CARE

Because Altenburg was the anesthesiologist for both of Froysland's surgeries, heart and arm, Froysland argued that the statute of limitations was tolled by continuing care until after the second surgery. Altenburg and Fargo Clinic responded that the continuous treatment rule has not yet been adopted in North Dakota. They submitted that it is unnecessary to adopt the continuous treatment rule in North Dakota because we already apply a generous discovery rule, as recognized in *Anderson v. Shook, supra*. If the continuous treatment rule is the law, they argued that it is inapplicable here because Altenburg's participation in Froysland's second surgery was a coincidence, rather than resulting from an ongoing physician-patient relationship.

There are two branches of the continuing care idea: one of continuous treatment for medical malpractice and another of continuous representation for legal malpractice. We applied the continuous representation rule for legal malpractice in *Wall v. Lewis:*

"We believe that the continuous representation rule appropriately protects the integrity of the attorney-client relationship and affords the attorney an opportunity to remedy his error (or to establish that there has been no error), while simultaneously preventing the attorney from defeating the client's cause of action through delay. We conclude that it is appropriate to apply the continuous representation rule in attorney malpractice actions in this state." 393 N.W.2d at 763.

Although the continuous representation rule originated as an adaptation of the continuous treatment rule, we have only applied the idea to legal malpractice so far.

We discussed, but did not adopt or apply, the continuous treatment theory for the first time in *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D.1968). Instead, we applied the rule that a statute of limitations did not begin to run until the plaintiff discovered, or could have discovered with reasonable diligence, the doctor's negligence. We implied that we might consider the continuous treatment rule in the future:

"The following excerpt from *Hundley v. St. Francis Hospital*, 161 Cal.App.2d 800, 327 P.2d 131, 80 A.L.R.2d 360 (1958), may indicate the direction in which it may be necessary to extend the rule [of discovery], dependent upon the facts:

" 'The rule is clear, as to malpractice actions, that "while the physician-patient relation continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician *upon whose skill, judgment and advice he continues to rely.*" (Citation omitted)....' " 158 N.W.2d at 512. (Emphasis added).

Thus, the continuing treatment concept is premised upon an ongoing and continuous relationship between patient and physician.

The reasons underlying the rule are that a patient must trust a physician to remain

in his care and that, during that care, the patient is not likely to suspect negligent treatment. It is the trust relationship that may make discovery of a claim difficult. The Minnesota Court of Appeals recently reviewed these rationales and summarized appropriate factors for determining when treatment ends:

"(1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done. (Citation omitted)." *Krause v. Farber*, 379 N.W.2d 93, 96 (Minn.App. 1985).

Thus, as a principle, continuous treatment anticipates something more than an isolated act of added attention by the physician more than two years after the initial conduct charged as injurious.

■ Froysland had no follow-up care from Altenburg after the first surgery. There was no ongoing relationship with Altenburg and no contact of any kind with him for over two years. Anesthesia for Froysland's second surgery was coincidental and not part of a continuing pattern of care begun in 1983. Froysland was not lulled into "sleeping on his rights" by any ongoing connection with Altenburg. The statute for the first surgery had run its course and the claim was time-barred. The second surgery did not revive a claim whose time had expired.

Froysland also grounds his claim of continuing treatment on the facts that he was seen and treated as a "group patient" by various doctors affiliated with the Fargo Clinic, from Devig and Altenburg for the first surgery through Altenburg and Johnson for and after the second surgery. The collective services of a medical clinic may sometimes call for a "group patient" extension of the continuous care concept, as the Minnesota Supreme Court has explained:

"... [W]here the patient sought treatment from a clinic as a whole rather than an individual physician, the treatment of the clinic as a whole, rather than that of the individual physician alleged to have committed the act of malpractice, is rele-vant for purposes of determining when treatment terminated and the statute of limitations began to run." *Offerdahl v. University of Minnesota*, 426 N.W.2d 425, 428 (Minn.1988).

But, Froysland's situation is quite different from Offerdahl's.

Offerdahl saw several different doctors, assigned at random, in a single clinic in connection with the same health problem associated with intrauterine devices. Froysland interrupted his treatment at Fargo Clinic. Devig was done treating Froysland by April 9, 1984 and, by August 1984, had referred him to a physician not associated with Fargo Clinic, Habinger, who assumed Froysland's care. Referral to an outside physician interrupted the care by the clinic and its physicians.

Referral to Habinger ended continuing care by Fargo Clinic. The subsequent association of those independent physicians with the clinic did not reinstate a relationship and thereby make it continuous in the sense contemplated by the rule. Froysland did not have an uninterrupted and continuing relationship with the Fargo Clinic from 1983 to 1985.

*Offerdahl* also identified a "single act exception" to the general rule about termination of treatment:

"A practical reason for the general 'termination of treatment rule' is that actionable treatment does not ordinarily consist of a single act or, even if it does, it is most difficult to determine the precise time of its occurrence. (Citation omitted). This concern is not present in this case, as Offerdahl has alleged an identifiable single act by the University as the basis for her negligence claim. Offerdahl's claim is in sharp contrast to the claim set forth in *Schmitt* [*v. Esser*, 178 Minn. 82, 226 N.W. 196 (1929)], where the precise negligent event could not be readily identified. (Citation omitted)." *Id.*, at 429.

Like the continuous representation rule, which applies only when "the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent

acts," *Wall, supra* at 762, the continuous treatment rule should apply only to the same condition. Froysland asserted a single, readily ascertainable act of alleged negligence at the heart surgery. It was a distinct event. He knew about his potential claim for that "single act" when he approached St. Luke's Hospitals in early September 1984. More than two years went by before Froysland sued Altenburg and Fargo Clinic. Therefore, his claim was time barred.

Were we to adopt the continuous treatment theory in North Dakota, Froysland's claim would clearly be outside the rule.

Because there were no genuine issues as to any material fact about the statute of limitations, we affirm the summary judgment.

ERICKSTAD, C.J., VANDE WALLE and GIERKE, JJ., and PEDERSON, Special Judge, concur.

PEDERSON, Special Judge, sitting in place of LEVINE, J., disqualified.