Edward ZETTEL, Plaintiff
and Appellant,

v.

L.H. LICHT, Radiologists, Ltd., Fargo
Clinic MeritCare, Defendants,

Gordon Madland and Community
Memorial Hospital, Lisbon, ND,
Defendants and Appellees.

Civ. No. 940067.

Supreme Court of North Dakota.

June 15, 1994.

J.P. Dosland, Dosland, Nordhougen, Lillehaug, Johnson and Saande, Moorhead, for plaintiff and appellant.

Patricia R. Ellingson, Nilles, Hansen & Davies, Ltd., Fargo, for defendants and appellees.

VANDE WALLE, Chief Justice.

Edward Zettel appealed from a summary judgment dismissing his medical malpractice claim against Gordon Madland and Community Memorial Hospital of Lisbon, as barred by the statute of limitations. We affirm.

On June 5, 1990 Dr. L.H. Licht, a radiologist, performed a venographic procedure on Zettel's right leg to determine the cause of swelling, pain, and redness in that leg. The procedure was conducted at Community Memorial Hospital, whose employee, Gordon Madland, a medical technician, assisted Dr. Licht. To conduct the procedure a needle was inserted through a vein in Zettel's right foot, and a contrast medium was injected through the needle into the vein. An x-ray was then taken of the area, for the radiologist to examine. During the procedure, an extravasation occurred in that the contrast medium escaped into the surrounding tissue of Zettel's foot. This is not supposed to occur, and it ultimately resulted in the amputation of the big toe of Zettel's right foot.

In December 1991, Zettel filed a malpractice claim against Dr. Licht and his employer, Radiologists, Ltd. However, Zettel did not take the deposition of technician Gordon Madland until May 21, 1993. During that deposition, Madland testified that he injected the contrast medium through the venographic needle and that during the procedure the needle came out. Madland said he was not sure how the needle was pulled loose. On June 23, 1993, Zettel amended his complaint to include a malpractice claim against Madland and Community Memorial Hospital. These defendants filed a motion for summary-judgment dismissal of Zettel's claim against them as being barred by the statute of limitations. The trial court granted the summary-judgment dismissal, and, because all other defendants had settled Zettel's claims against them, the court entered a judgment dismissing the entire case. Zettel appealed.

■ Under Section 28–01–18(3), N.D.C.C., a medical malpractice action must be commenced within two years of the discovery of the act or omission of alleged malpractice. The limitation period begins to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence. *Wheeler v. Schmid Laboratories, Inc.,* 451 N.W.2d 133 (N.D.1990). Knowledge is an objective standard which focuses upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. *Froysland v. Altenburg,* 439 N.W.2d 797 (N.D.1989). The plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment, but the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion. *Wall v. Lewis,* 393 N.W.2d 758 (N.D.1986).

■ Following the procedure, Zettel was immediately told that the extravasation occurred, and the resulting injury manifested itself soon thereafter. Zettel immediately recognized the radiologist's possible negligence for failing to properly conduct and monitor the procedure, and Zettel filed a timely malpractice claim against Dr. Licht and his employer. However, Zettel argues that a reasonable person, at the time the original suit was brought, would not have suspected possible negligence by Madland, the assisting technician. We disagree.

Zettel knew a medical technician assisted in conducting the procedure, and he was also aware that extravasation could be the result of improper needle placement or careless movement causing the needle to pull loose during the procedure. With this knowledge, a reasonable person would recognize that the technician or anyone else directly involved in assisting with the procedure could possibly have acted negligently, thereby causing the extravasation to occur. There appears to be

little more reason to suspect that the injury was caused by the negligence of the radiologist, Dr. Licht, than that it was caused by the negligence of Madland, the medical technician. Even though the hospital medical records did not reveal that the needle was pulled loose or how the extravasation actually occurred, a reasonable person, in our view, would have recognized the need to investigate the possible negligence of all persons assisting with the procedure.

In February 1992, within two years following the procedure, Zettel's response to an interrogatory shows he was aware that others may have relevant information about what happened:

> "A specific outline of [our medical expert's] opinions will be the subject of a supplemental response to this Interrogatory after the depositions of the Defendant Dr. Licht and the x-ray technician are taken."

Nevertheless, Zettel failed to depose Madland until more than one year later, on May 21, 1993.

In *Froysland v. Altenburg*, 439 N.W.2d 797 (N.D.1989), we concluded that, as a matter of law, the plaintiff discovered the possible negligence of an anesthesiologist at the time he knew of the injury, its cause, and of the possible negligence. Froysland suffered an arm injury during open-heart surgery, but he did not bring a medical malpractice action against the anesthesiologist until more than three years after the heart surgery. Froysland argued that the limitations period did not begin to run until his attorney, after consulting an expert on operating procedure, realized that it was the anesthesiologist who was responsible for padding his arm during the surgery. Froysland claimed he did not have reason to know of the anesthesiologist's possible negligence until that consultation. This court concluded that Froysland should have known earlier about the possible negligence of anyone assisting during the operation:

> "Froysland ... knew, or had reason to know, that someone associated with that first surgery was responsible. At that point, he knew of the injury, of its cause, and of the possible negligence; he had

only to identify all who were involved in the operation. He had ample time to do so within two years thereafter. Discovery requires the exercise of reasonable diligence."

*Froysland, supra*, 439 N.W.2d at 798.

This case is factually similar. Zettel knew his injury was caused by an extravasation which occurred during the venographic procedure. He also knew that a medical technologist directly assisted the radiologist in conducting the procedure. Under these circumstances, a reasonable person exercising due diligence should have known of the possible negligence of the technician and anyone else associated with the procedure. More than two years elapsed from the time when Zettel, as a matter of law, should have discovered Madland's alleged negligence, and therefore, his claim is barred by Section 28–01–18(3), N.D.C.C.

The summary judgment dismissing Zettel's claim against Madland and Community Memorial Hospital is affirmed.

MESCHKE, SANDSTROM and NEUMANN, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concurring.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of LEVINE, J., disqualified.