1999 ND 165

**John SCHANILEC, Plaintiff and Appellant,**

v.

**GRAND FORKS CLINIC, LTD., Defendant and Appellee.**

**No. 980341.**

Supreme Court of North Dakota.

Aug. 25, 1999.

Rehearing Denied Sept. 22, 1999.

Shirley A. Dvorak of Moosbrugger, Dvorak & Carter, Grand Forks, for plaintiff and appellant.

H. Patrick Weir (argued) and Sidney J. Spaeth of Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] John Schanilec appealed from the memorandum decision and order granting Grand Forks Clinic summary judgment in his medical malpractice suit. Because Schanilec was on notice of his potential claim more than two years before he filed suit, the case was barred by the statute of limitations in medical malpractice cases and summary judgment was appropriate. We affirm.

I

[¶ 2] Schanilec was in a car accident on November 18, 1981. As a result of the accident, he was treated by Dr. John Lambie and others at the Grand Forks Clinic from November 24, 1981, to February 1994. He was being treated for back problems, which the doctors at the clinic had diagnosed as fibrositis, a muscular condition.

[¶ 3] Schanilec says he asked Dr. Lambie for a referral to an orthopedic surgeon, but when Dr. Lambie refused and referred him to a rheumatologist instead, he sought the assistance of Dr. A.J. Kotnik of Grafton. When Schanilec saw Dr. Kotnik on February 14, 1994, Kotnik referred him back to the Grand Forks Clinic, this time to Dr. Stuart Rice for a neurology evaluation of his back. An appointment was scheduled at the Grand Forks Clinic for May 10, 1994, but Schanilec arranged an earlier appointment at The Orthopaedic Clinic with Dr. John Zeller and did not show up for his May 10 appointment at the Grand Forks Clinic.

[¶ 4] On February 19, 1994, Schanilec met with Dr. Zeller, who referred him to Dr. Jerry Sampson at the Dakota Clinic in Fargo for a discogram. Schanilec concedes that in February of 1994, he learned he had, in fact, sustained a compression fracture of vertebrae in his lower back. He had previously been told he had a bulging disc in the same location, but the doctors at the Grand Forks Clinic diagnosed his problem as muscular rather than skeletal.

[¶ 5] On April 14, 1994, Dr. Francis Denis discussed the results of the discogram with Schanilec and explained that the discogram done above and below the L2–3 and L3–4 levels showed essentially the L1–2 level to be intact and the L4–5 level to produce some pain. "L" refers to the lumbar vertebrae in the lumbar region of the spinal column. Dr. Denis then advised Schanilec the reasonable course would be to proceed with a surgical fusion at disc L2 to L4, and explained the potential risks and the details of the surgery. The surgery, consisting of an anterior spinal fusion of L2–3 and L3–4, followed by a posterior spinal reconstruction of L2–3 and L3–4 and bone graft, was performed on Schanilec on May 17, 1994. During surgery, Dr. Denis found a large fragment of bone at Schanilec's spine. According to Dr. Denis, "[t]his was confirming the x-ray appearance, which was suggestive of a hyperextension injury at that level, back years ago."

[¶ 6] Schanilec began this action on March 25, 1996, alleging negligence by Grand Forks Clinic in: (1) the original diagnosis and failure to properly diagnose and treat; (2) failing to inform about the fractured vertebrae; and (3) refusing to refer him to another clinic or physician.

[¶ 7] The district court granted Grand Forks Clinic's motion for summary judgment because Schanilec's medical malpractice action was not begun within two years of discovery of the alleged malpractice, as required by N.D.C.C. § 28–01–18(3). The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 8] Summary judgment is a procedure for the prompt and expeditious disposition

of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the results. *Swenson v. Raumin,* 1998 ND 150, ¶ 8, 583 N.W.2d 102 (citing *Perry Center, Inc. v. Heitkamp,* 1998 ND 78, ¶ 12, 576 N.W.2d 505). On appeal, this Court reviews the evidence in a light most favorable to the party opposing the summary judgment motion. *Id.* (citing *Freed v. Unruh,* 1998 ND 34, ¶ 6, 575 N.W.2d 433).

[¶ 9] In considering a motion for summary judgment, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate. *Id.* at ¶ 9 (citing *Matter of Estate of Otto,* 494 N.W.2d 169, 171 (N.D.1992)). Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive standard of proof at trial when ruling on a summary judgment motion. *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 474–75 (N.D.1991). The party resisting the motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means, raising an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D.1994). Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Matter of Estate of Stanton,* 472 N.W.2d 741, 746 (N.D.1991).

A

[¶ 10] Schanilec argues the district court erred in granting summary judgment, because his medical malpractice action was not barred by the two-year statute of limitations.

The following actions must be commenced within two years after the claim for relief has accrued:

> 3. An action for the recovery of damages resulting from malpractice; provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital. This limitation is subject to the provisions of section 28–01–25.

N.D.C.C. § 28–01–18(3).

[¶ 11] The statute is silent on when an action accrues, and consequently the determination of when an action accrues is an issue for the court. *Baird v. American Medical Optics,* 155 N.J. 54, 713 A.2d 1019, 1025 (1998). In the context of medical malpractice actions, a cause of action generally accrues on the date the alleged act or omission occurred. *Id.* To ameliorate the often harsh and unjust results of such a rigid rule, most courts have adopted the discovery rule. *Id.* The discovery rule is meant to balance the need for prompt assertion of claims against the policy favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it. *Buck v. Miles,* 89 Hawai'i 244, 971 P.2d 717, 722 (1999) (citation omitted).

[¶ 12] This Court has adopted the discovery rule in medical malpractice cases and held the two-year statute of limitations begins to run "when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the

defendant's possible negligence." *Zettel v. Licht*, 518 N.W.2d 214, 215 (N.D.1994) (citing *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133 (N.D.1990)); *see also Iverson v. Lancaster*, 158 N.W.2d 507 (N.D. 1968) (first North Dakota case to adopt the discovery rule).

[¶ 13] This Court has held:

[T]he focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be subjectively convinced that he has been injured and that the injury was caused by the defendant's negligence.

*Wheeler*, 451 N.W.2d at 137 (quoting *Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986)). *See also Buck*, 971 P.2d at 722–23 (legal knowledge of defendant's negligence is not required); *Baird*, 713 A.2d at 1025 (discovery rule delays the accrual of the cause of action until "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim"); *Langner v. Simpson*, 533 N.W.2d 511, 516–17 (Iowa 1995) (statute of limitations begins to run when plaintiff knew or through the use of reasonable diligence should have known of the injury); *Sweeney v. Preston*, 642 So.2d 332, 333–34 (Miss.1994) (quoting *Smith v. Sanders*, 485 So.2d 1051, 1052 (Miss.1986)) ("The focus is upon the time that the plaintiff discovers, or should have discovered, by the exercise of reasonable diligence, that he probably had an actionable injury."); *Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 351 (Iowa 1987) (citation omitted) ("The statute begins to run when the person gains knowledge sufficient to put him on inquiry. On that date, [the person] is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation."); *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438, 443–44 (1983) (a cause of action accrues in a medical malpractice case and the statute of limitations

commences to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury); *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 421 N.E.2d 869, 874 (1981) (statute of limitations begins to run when a person knows or reasonably should know of the injury or knows or reasonably should know the injury was wrongfully caused); *Young v. McKiegue*, 303 Ill.App.3d 380, 236 Ill.Dec. 907, 708 N.E.2d 493, 499 (1999) (discovery rule tolls the statute of limitations until the plaintiff knows or should have known of the injury); *Charter Peachford Behavioral v. Kohout*, 233 Ga.App. 452, 504 S.E.2d 514, 521 (1998) (cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, the injury); *Deschamps v. Pulley*, 784 P.2d 471, 473 (Utah Ct.App.1989) (statute of limitations does not begin to run until the person knows or should know of the injury and knows or should know the injury was caused by negligence); *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 516 N.E.2d 204, 208 (1987) (trial court must determine "when the injured party became aware, or should have become aware, of the extent and seriousness of his condition ... and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition").

[¶ 14] In *Bolton v. Caine*, 541 A.2d 924, 925 (Me.1988), the Court analyzed a surgical malpractice action involving a foreign object left in a patient's body, and when that action accrues. The Court recognized a case of negligent diagnosis differs from a foreign-object case because of professional judgment and discretion, but nonetheless held the discovery rule applied in these cases as well. *Id.* at 926. In doing so, the *Bolton* Court:

join[ed] those states in declining to make the application of the discovery rule solely dependent on the type of evidence that may be produced at trial. The reasons compelling the application of the

discovery rule to foreign object surgical malpractice are equally applicable to this case involving negligent diagnosis of a cancerous lesion.

*Id.*

[¶ 15] Other states agree with the rationale of *Bolton* and apply the same discovery rule to the misdiagnosis case. *Oliver,* 449 N.E.2d at 438; *Toth v. Lenk,* 164 Ind.App. 618, 330 N.E.2d 336 (1975); *Frohs v. Greene,* 253 Or. 1, 452 P.2d 564 (1969). *See also Ford v. Dove,* 218 Ga. App. 828, 463 S.E.2d 351 (1995) (the injury begins immediately upon the misdiagnosis); *Moran v. Napolitano,* 71 N.J. 133, 363 A.2d 346 (1976) (extending the discovery rule to misdiagnosis cases).

[¶ 16] In Schanilec's alleged negligent diagnosis case, the district court identified the following undisputed facts:

> In the case at bar, Schanilec suspected something as early as February, 1994, when he asked Dr. Lambie for a referral.... On February 19, 1994, Schanilec learned that his back problems were, in fact, skeletal, and that the diagnosis made by the Clinic were [sic] likely wrong and perhaps negligent.

> In fact, Schanilec testified that when he met with Dr. Zeller for the first time (approximately February 19, 1994) [Dr. Zeller] took x-rays and [Schanilec] stated that there was a "very significant, if not total disappearance of disc spacing between [disc] L2–3 and 3–4." ... Furthermore, [Schanilec] stated that the findings on the x-ray were obvious, that "most lay people could see on that x-ray that there was a definite problem there."

The district court concluded that on or about February 19, 1994, Schanilec knew, or with reasonable diligence should have known, of the injury, its cause, and the clinic's possible negligence. The court concluded the date Schanilec began this action—March 25, 1996—was beyond the two-year statute of limitations and granted the clinic summary judgment.

[¶ 17] In *Zettel,* this Court upheld a summary judgment dismissing a plaintiff's case in which the patient had immediately recognized the radiologist's possible negligence for failing to properly conduct and monitor a procedure, but did not file suit against the assisting technician. 518 N.W.2d at 216. The patient knew the medical technician assisted in conducting the procedure, and he was also aware that his injury could have been the result of improper needle placement or careless movement causing the needle to pull loose during the procedure. *Id.* This Court held that with this knowledge, a reasonable person would recognize the technician or anyone else directly involved in assisting with the procedure could possibly have acted negligently, thereby causing the injury. *Id.* There was no more reason to suspect the injury was caused by the negligence of the doctor than by the negligence of the medical technician. *Id.* In this Court's view, a reasonable person would have recognized the need to investigate the possible negligence of all persons assisting with the procedure. *Id. See also Froysland v. Altenburg, M.D.,* 439 N.W.2d 797, 798 (N.D.1989) (upholding summary judgment against the plaintiff when he knew or should have known of the possible claim).

[¶ 18] We hold the discovery rule is no different in a negligent diagnosis case than it is in any other claimed medical malpractice case. By the end of February 1994, Dr. Zeller diagnosed Schanilec as suffering not from fibrositis but from back problems caused by fractured vertebrae and collapsed discs. At this point, Schanilec knew the prior diagnosis by the Grand Forks Clinic had been wrong. Schanilec conceded in his deposition he "had the whole picture together" and he could tell the injury was not fibrositis, but was skeletal, in February 1994. With this knowledge, and with the recurring problems Schanilec had experienced, he knew, or reasonably should have known, the earlier

diagnosis was possibly negligent.[1] A reasonable person in Schanilec's position would have known, or should have known, of the injury, its cause, and the defendant's possible negligence.

[¶ 19] To trigger the running of the statute of limitations, Schanilec need not fully appreciate the potential liability or even be convinced of his injury; he need only know enough to be on notice of a potential claim. The discovery rule assures the statute does not begin to run until a reasonably diligent person becomes aware of a potential claim. Schanilec's own testimony established that no later than February of 1994, he knew enough to discover his cause of action against the Grand Forks Clinic, and this put him on notice more than two years before March 26, 1996, when he began this action. This case was begun beyond the two-year statute of limitations in malpractice cases and is barred by N.D.C.C. § 28–01–18(3).

■ [¶ 20] Schanilec argues the discovery of his injury is a question of fact appropriate for a jury. " 'A malpractice plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment, but the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion.' " *Froysland*, 439 N.W.2d at 799 (quoting *Wall*, 393 N.W.2d at 761). Reasonable minds could draw only one conclusion: Schanilec knew, or should have known, of his injury, its misdiagnosis, and the possible negligence of the Grand Forks Clinic by late February 1994.

## B

■ [¶ 21] It remains then to find whether an exception will toll the statute. Schanilec argues the continuous treatment doctrine works to prevent the statute from running. The continuous treatment doctrine "concept is premised upon an ongoing and continuous relationship between patient and physician." *Froysland*, 439 N.W.2d at 799. The rule is clear that while the relationship of the physician and patient exists, the patient is not on notice of the negligent conduct of the physician upon whose skill and judgment the patient still relies. *Iverson*, 158 N.W.2d at 512 (citations omitted). This Court, however, has never adopted the continuous treatment doctrine in medical malpractice cases. *See Froysland*, at 799 (we have only applied the continuous representation doctrine to legal malpractice cases).

[¶ 22] Schanilec last visited Dr. Lambie at the Grand Forks Clinic on February 14, 1994. This was the last professional contact he had with the clinic or any of the doctors there. Schanilec even testified he considered his association with Dr. Lambie terminated no later than February 14, 1994.

[¶ 23] Were we to adopt the continuous treatment rule in North Dakota, Schanilec's claim would clearly be outside of it because his association with Dr. Lambie and Grand Forks Clinic ended on February 14, 1994.

## III

[¶ 24] The summary judgment of the district court dismissing Schanilec's claim

---

1. The dissent says, "Nothing in the record indicates Schanilec knew or should have known he sustained an injury caused by Dr. Lambie's failure to diagnose earlier a vertebral fracture and two collapsed discs." But in fact the record establishes Schanilec had suffered years of pain. He knew something was wrong, which is why he persisted in seeking alternative medical advice, and, on February 19, 1994, "had the whole picture together."

The dissent says, "However, under our cases, he must also be apprised of facts that would put a reasonable person on notice he sustained an injury, i.e., accelerated collapse of his vertebral discs...." The language following "i.e." reflects the flaw in the dissent's analysis. The plaintiff was on notice of injury by February 19, 1994. None of our cases require a person reasonably on notice of injury to be aware of every dimension of the injury. *Anderson v. Shook*, 333 N.W.2d 708, 711 (N.D.1983). Schanilec knew of the pain and suffering, itself "injury," N.D.C.C. § 32–03.2–04(2); *see Nitschke v. Barnick*, 226 N.W.2d 785 (N.D.1975); *Marts v. Cauley*, 118 Ga.App. 343, 163 S.E.2d 751 (1968), and of the collapsed discs.

against Grand Forks Clinic, Ltd., is affirmed.

[¶ 25] VANDE WALLE, C.J., and KAPSNER, J., concur.

MARING, Justice, dissenting and concurring.

[¶ 26] I concur with that part of the majority opinion that concludes even were we to adopt a continuous treatment exception it would be inapplicable to this case. I dissent from the remainder of the opinion.

[¶ 27] This Court first adopted the discovery rule in *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D.1968).[2] In 1975, the Legislature amended and reenacted subsection 3 of section 28–01–18, N.D.C.C., relating to the limitation of malpractice actions to provide:

> 3. An action for the recovery of damages resulting from malpractice, provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital.
>
> This limitation shall be subject to the provisions of section 28–01–25.

1975 N.D. Sess. Laws ch. 284, § 1. In *Anderson v. Shook*, 333 N.W.2d 708 (N.D. 1983), we addressed the knowledge required by a plaintiff in a medical malpractice case which would cause an action to "accrue" under N.D.C.C. § 28–01–18(3).[3] Our Court rejected the rationale of *United States v. Kubrick*, 444 U.S. 111, 121–22, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), in

which the United States Supreme Court concluded the two-year statute of limitations accrues or begins to run when a plaintiff knows or should know of his injury and its probable cause, but there is no requirement he know or should know of the doctor's wrongdoing. *Anderson*, 333 N.W.2d at 710. In construing our statute regarding when a medical malpractice claim accrues in *Anderson*, we also disagreed with Dr. Shook's argument that the statute begins to run when the plaintiff discovers the possibly negligent act. We stated:

> Dr. Shook's construction of Sec. 28–01–18, NDCC encourages any person who has an injury to file a lawsuit against a physician or hospital to prevent the statute of limitation from running. This is contrary to the policy that unfounded claims should be strongly discouraged. The better interpretation of Sec. 28–01–18 is that discovery of "the act or omission of alleged malpractice" refers to discovery of medical malpractice consisting of breach of a duty, injury, and causation.

*Id.* at 710 (citation omitted). In *Anderson*, we quoted at length from courts in Utah, Oregon, Hawaii and the United States District Court of the District of Columbia in support of our decision. *Id.* at 710–11. We noted the reasoning of the United States District Court of the District of Columbia:

> This policy [of a discovery rule] is applied to different factual situations as they arise. Where the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. Where the injury and

**2.** The statute relevant to the holding in *Iverson* read in pertinent part:
28–01–18. Actions having two-year limitations. The following actions must be commenced within two years after the cause of action has accrued:
. . . .

3. An action for the recovery of damages resulting from malpractice.

**3.** The North Dakota statute of limitations for malpractice read in relevant part the same as amended by the 1975 N.D. Sess. Laws ch. 284.

causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing. We believe the District of Columbia courts would follow this progression.... We predict that the District of Columbia Court of Appeals would hold that the statute of limitations in this case did not begin to run until plaintiff learned, or in the exercise of due diligence should have learned, that her injuries were the result of some wrongdoing on the part of the defendants. This does not mean that plaintiff had to be aware of all the elements of a legal cause of action, of the probability of success in such a lawsuit, or that her knowledge of wrongdoing had to rise to a level of certainty. It merely means that she had to have some awareness, or imputed awareness, that her injuries were the result of some wrongdoing on the part of defendants....

*Id.* at 711 (quoting *Dawson v. Eli Lilly and Co.*, 543 F.Supp. 1330, 1338–39 (D.C. 1982)).

[¶ 28] Our court consistently has held the statute of limitations for medical malpractice actions commences to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence. *Zettel v. Licht*, 518 N.W.2d 214, 215 (N.D.1994); *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 137 (N.D.1990); *Froysland v. Altenburg*, 439 N.W.2d 797, 798 (N.D.1989).

[¶ 29] The Grand Forks Clinic argues that it is enough to commence the running of the statute of limitations if Schanilec knew Dr. Lambie failed to diagnose the two collapsed discs and the vertebral fracture. But, as we said in *Anderson*, our law requires more. The law requires not only knowledge of facts that would put a reasonable person on notice of possible negligence—the misdiagnosis—but, also

the knowledge of an injury and the cause of the injury. Nothing in the record indicates Schanilec knew or should have known he sustained an injury caused by Dr. Lambie's failure to diagnose earlier a vertebral fracture and two collapsed discs. Schanilec admits he knew on February 19, 1994, his x-rays revealed the collapse of the vertebral discs between L2–3 and L3–4 and that he had a fracture of his L3 vertebrae. Dr. Zeller's medical report dated February 19, 1994, to Dr. Kotnik indicates Dr. Zeller believed the fracture was from the car accident in 1981 and the ongoing "kyphotic deformity" was "secondary to the trauma sustained in his motor vehicle accident some 12 years ago." There is nothing in the record to indicate Schanilec did not relate these medical conditions to his auto accident injuries. Dr. Zeller's medical records dated March 17, 1994, indicate on that date he discussed the discogram results with Schanilec which confirmed Schanilec had significant two level disc collapse at both L2–3 and L3–4. There is no question Schanilec knew by March 17, 1994, of Dr. Lambie's failure to diagnose his vertebral fracture. However, under our cases, he must also be apprised of facts that would put a reasonable person on notice he sustained an injury, i.e., accelerated collapse of his vertebral discs, and that the injury was caused by Dr. Lambie's possible negligence.

[¶ 30] Based on the record, including the testimony of Schanilec, the medical record exhibits, and the answers to interrogatories, a reasonable mind could draw the inference that a reasonable person would not be placed on notice prior to March 25, 1994, that he had sustained an injury caused by the misdiagnosis, and not by the original car accident.[4]

[¶ 31] Summary judgment should be granted only if it appears there are no genuine issues of material fact or any conflicting inferences which may be drawn. *Duncklee v. Wills*, 542 N.W.2d 739, 742

---

**4.** Schanilec commenced this action on March 25, 1996.

(N.D.1996). "A malpractice plaintiff's knowledge is ordinarily a question of fact, and summary judgment is rarely appropriate on the issue of when the plaintiff should have discovered there was a potential malpractice claim." *Id.* A plaintiff cannot have a potential malpractice claim without an injury, and the defendant's negligence causing the injury. On appeal from summary judgment, evidence is viewed in the light most favorable to the party against whom summary judgment was granted. *Wheeler,* 451 N.W.2d at 136. In my opinion, determining when Schanilec was apprised of facts which would have placed a reasonable person on notice that the failure to diagnose his vertebral fracture caused an injury is a question of fact. Until Schanilec is apprised of facts indicating the failure to diagnose his fracture caused an injury, it is difficult to see how the statute of limitations could begin to run. I, therefore, believe summary judgment of dismissal was not proper because reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts.

[¶ 32] The majority cites to a number of other jurisdictions for the proposition that the discovery rule applies to a misdiagnosis case. There is no dispute over whether the discovery rule applies to a case of misdiagnosis. In fact, *Iverson v. Lancaster,* 158 N.W.2d 507 (N.D.1968), the case in which this Court adopted the discovery rule, was a misdiagnosis case.

[¶ 33] For these reasons, I would reverse and remand for trial on the issue of plaintiff's knowledge.

[¶ 34] NEUMANN, J., concurs.