2001 ND 103

**Mark V. LARSON, Plaintiff and Appellee**

v.

**NORKOT MANUFACTURING, INC., Western Industries, Inc., and James Page, individually, Defendants, Third–Party Plaintiffs and Appellants,**

v.

**McGee, Hankla, Backes & Wheeler, P.C., Third–Party Defendant and Appellee.**

**No. 20000321.**

Supreme Court of North Dakota.

May 24, 2001.

Lyle W. Kirmis, Zuger Kirmis & Smith, Bismarck, for plaintiff and appellee.

James L. Norris, P.C., Houston, TX, for defendants, third-party plaintiffs, and appellants.

Steven A. Storslee, Storslee Law Firm, P.C., Bismarck, for third-party defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Norkot Manufacturing, Inc., Western Industries, Inc., and James Page (collectively, "Page") appealed a district court memorandum and order granting the motion of McGee, Hankla, Backes & Wheeler, P.C. ("McGee"), for summary judgment dismissing Page's third-party complaint against it and granting the motion of Mark V. Larson for summary judgment dismissing Page's counterclaim against him.[1] We conclude there is a genuine issue of material fact precluding summary judgment. We affirm the stipulated dismissal of Larson's claim against Page, and reverse the remainder of the judgment, and remand for further proceedings.

I

[¶ 2] In late 1992 and early 1993, Larson, a member of the McGee law firm, represented Page in negotiating a business asset sale involving grinders and the right to manufacture grinders to Rexworks, Inc. Larson drafted an asset purchase agreement and other agreements, which were signed on February 2, 1993.

[¶ 3] In a third-party complaint dated January 2, 1996, and filed in a South Dakota circuit court on January 3, 1996, Rexworks named Page as a defendant in a lawsuit involving a grinder manufactured by Page and sold by Rexworks, which caught fire and was destroyed. Page was also joined in a Texas lawsuit in March 1996.

---

1. We treat this as an appeal from the subsequently entered consistent judgment. *Hentz* *v. Hentz*, 2001 ND 69, ¶ 1 n. 1, 624 N.W.2d 694.

[¶ 4]   Larson sued Page on January 12, 1998, to recover unpaid legal fees.   On February 6, 1998, Page answered and counterclaimed for legal malpractice for failing to include in the sale contracts with Rexworks "any provision in the contract to protect Norkot and Page from liability to parties who may be injured, physically or financially, as a consequence of the use of any of the assets transferred from Norkot to Rexworks."   Page filed a third-party complaint against McGee, alleging the same legal malpractice claim.

[¶ 5]   McGee moved for summary judgment dismissing Page's third-party complaint on the ground that the claim was barred by the statute of limitations.   Larson supported McGee's motion and sought dismissal of Page's counterclaim on the ground it was barred by the statute of limitations.   In a responding affidavit, Page said "Larson never discussed with me that ... we needed to have an indemnity agreement from Rexworks for the products that Rexworks would manufacture after the sale."   Page further averred:

By not knowing that there needed to be such an indemnity agreement, I was unaware that Larson had committed legal malpractice and I was unaware that Norkot and I had been damaged by Larson's malpractice.   The first time I became aware of Larson's legal malpractice was when I was served with the third-party petition by Rexworks in the Texas Dirtworks case sometime shortly after April 17, 1996 (see attached Exhibit 75).

In an August 17, 2000, memorandum and order granting the motions for summary judgment, the district court ruled:

The first manifestation of potential claim for negligence occurred when Page was served with the complaint in the South Dakota litigation on January 5, 1996. This would have triggered discussions between Page and his attorneys about the indemnification provisions of the agreements.... The written documents and time table objectively show that Page was aware of a potential claim for negligence about indemnification under the 1993 agreements when he was sued for the South Dakota case on January 5, 1996.   Since he did not serve his counterclaim until February 6, 1998, the statute of limitations had run and his claim must be barred.[2]

The parties stipulated to dismissal of Larson's complaint.   A judgment was entered dismissing Larson's complaint, dismissing Page's counterclaim against Larson, and dismissing Page's third-party complaint against McGee.   Page appealed.

[¶ 6]   The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06.   The appeal was timely under N.D.R.App.P. 4(a).   This Court has jurisdiction under N.D. Const. art.  VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7]   Under N.D.R.Civ.P. 56, summary judgment shall be rendered if there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law.   Summary judgment may be issued to dispose of a controversy without trial if either party is entitled to judgment as a matter of law, if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes

2.   January 5, 1996, was not the correct date of service in the South Dakota lawsuit.   The registered agent for Norkot Manufacturing Company, Inc., was actually served on January 8, 1996.

would not alter the result. *Mead v. Farmers Union Mut. Ins. Co.*, 2000 ND 139, ¶ 12, 613 N.W.2d 512.

### III

[¶ 8] Page contends on appeal, among other things:

> Norkot and Page's position on the present appeal is that the earliest the statute of limitations could have started to run was when Page signed the return receipt on April 20, 1996 on the third-party petition involving the Texas Dirt Works case; since April 20, 1996, was the first time that Page was aware of any claim of liability against Norkot and Page by Rexworks for a maxigrinder manufactured by Rexworks. Thus Norkot and Page's service of the counterclaim on Larson and the third-party complaint on the Firm on February 6, 1998 was clearly within the two year statute of limitations.

Larson and McGee contend the statute of limitations began to run when Page and Norkot were brought into the South Dakota litigation in January 1996, which provided notice of a potential claim for malpractice, and since they did not commence a claim for malpractice until February 1998, the claim was barred by the two-year statute of limitations.

[¶ 9] The elements of a legal malpractice action for professional negligence are the existence of an attorney-client relationship, a duty by the attorney to the client, a breach of that duty by the attorney, and damages to the client proximately caused by the breach of that duty. *Dan Nelson Constr., Inc. v. Nodland & Dickson*, 2000 ND 61, ¶ 14, 608 N.W.2d 267. The two-year statute of limitations under N.D.C.C. § 28–01–18(3) applies to malpractice actions against attorneys. *Binstock v. Tschider*, 374 N.W.2d 81, 84 (N.D.1985). "A cause of action for legal malpractice does not accrue, and the statute of limitations does not commence to run, until the client has incurred some damage." *Wall v. Lewis*, 366 N.W.2d 471, 473 (N.D.1985). We have adopted a discovery rule, which tolls the statute of limitations in malpractice actions until the plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant's possible negligence. *Jacobsen v. Haugen*, 529 N.W.2d 882, 885 (N.D.1995).

[¶ 10] In applying the discovery rule, "the focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be subjectively convinced that he has been injured and that the injury was caused by the defendant's negligence." *Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986). To trigger the running of the statute of limitations, a malpractice plaintiff need not fully appreciate the potential liability or even be convinced of an injury; he or she need only know enough to be on notice of a potential claim. *Schanilec v. Grand Forks Clinic, Ltd.*, 1999 ND 165, ¶ 19, 599 N.W.2d 253. "A malpractice plaintiff's knowledge is ordinarily a question of fact, and summary judgment is rarely appropriate on the issue of when the plaintiff should have discovered there was a potential malpractice claim." *Duncklee v. Wills*, 542 N.W.2d 739, 742 (N.D.1996). A malpractice plaintiff's knowledge becomes an issue of law if the evidence is such that reasonable minds could draw but one conclusion. *Wall*, 393 N.W.2d at 761.

[¶ 11] The district court rejected the signing of the agreements involved in the sale on February 2, 1993, as the date the statute of limitations began to run. The court found the transaction was complex and there were no facts showing Page

"should have been placed on notice of a potential claim by simply reading the agreements." The district court ruled "[t]he first manifestation of potential claim for negligence occurred when Page was served with the complaint in the South Dakota litigation on January 5, 1996." The City of Rapid City sued Rexworks in South Dakota, alleging a Norkot Maxigrinder demolition grinder it purchased from Rexworks "malfunctioned, caught on fire and was destroyed." In a third-party complaint dated January 2, 1996, Rexworks sued Norkot as a third-party defendant, seeking indemnification or contribution for any damages for which Rexworks might be found liable to the City of Rapid City. The Sheriff of Burleigh County, North Dakota, certified that the third-party complaint was served upon Norkot by "delivering to and leaving with *Max Rosenberg, P.C., Registered Agent,* a true and correct copy thereof" on January 8, 1996. On February 21, 1996, Norkot's attorneys filed an answer, counterclaim, and crossclaim dated February 20, 1996, in South Dakota Circuit Court, seeking indemnity or contribution.

[¶ 12] We agree with the trial court that service upon Page of the third-party complaint in the South Dakota litigation "would have triggered discussions between Page and his attorneys about the indemnification provisions of the agreements." Such discussions reasonably should have provided Page with knowledge sufficient to trigger the running of the statute of limitations. Page's registered agent received the third-party complaint in the South Da-

kota litigation on January 8, 1996. Page's attorneys prepared an answer and counterclaim seeking indemnity or contribution, which was dated February 20, 1996. The parties have not drawn our attention to any record evidence showing when Page was actually apprised of the third-party complaint in the South Dakota litigation or when Page discussed that litigation with attorneys in preparing to respond to the third-party complaint, to determine by what date between January 8, 1996, and February 20, 1996, "discussions between Page and his attorneys about the indemnification provisions of the agreements" should reasonably have taken place. Thus, the record is not clear whether the statute of limitations had run by the time Page served his counterclaim.

[¶ 13] We conclude there is a genuine issue of material fact precluding summary judgment on the question of when Page knew, or with reasonable diligence should have known, of the injury, its cause, and the defendants' possible negligence.[3] The focus of inquiry is when Page was "apprised of facts which would place a reasonable person on notice that a potential claim exist[ed]." *Wall,* 393 N.W.2d at 761. The ultimate question with regard to triggering the running of the statute of limitations is when did Page "know enough to be on notice of a potential claim" for legal malpractice. *Schanilec,* 1999 ND 165, ¶ 19, 599 N.W.2d 253.

IV

[¶ 14] The judgment is affirmed to the extent it dismissed Larson's claim against

3. We note courts have imputed an attorney's knowledge to the attorney's client in determining statute of limitations issues. *See, e.g., Preblich v. Zorea,* 996 P.2d 730, 736 (Alaska 2000) (client charged with constructive discovery when the client's new attorney should have discovered the client's cause of action against the client's previous attorney); *Ver-*

*mont Agency of Natural Res. v. Towns,* 168 Vt. 449, 724 A.2d 1022, 1025 (1998) ("notice to an attorney sufficient to trigger the statute of limitations is imputed to the client, and will bar a claim, regardless of whether that information was actually communicated to the client").

Page. The remainder of the judgment is reversed, and the matter is remanded for further proceedings.

[¶ 15] VANDE WALLE, C.J., MARING, KAPSNER, JJ., and HODNY, S.J.

[¶ 16] WILLIAM F. HODNY, S.J., sitting in place of NEUMANN, J., disqualified.