Filed 11/5/02 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2002 ND 175

Mark V. Larson, Plaintiff and Appellee

v.

Norkot Manufacturing, Inc.,

Western Industries, Inc.,

and James Page, individually, Defendants, Third-Party

 Plaintiffs and Appellants

v.

McGee, Hankla, Backes & Wheeler, P.C., Third-Party Defendant

 and Appellee

No. 20020058

Appeal from the District Court of Bottineau County, Northeast Judicial District, the Honorable Lester Ketterling, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Lyle W. Kirmis, Zuger Kirmis & Smith, P.O. Box 1695, Bismarck, N.D. 58502-1695, for plaintiff and appellee.

James L. Norris, James L. Norris, P.C., 12722 Watercress Park, Houston, Texas 77041, for defendants, third-party plaintiffs and appellants.

Steven A. Storslee, Storslee Law Firm, P.C., P.O. Box 4007, Bismarck, N.D. 58502-4007, for third-party defendant and appellee.

Larson v. Norkot Manufacturing

No. 20020058

VandeWalle, Chief Justice.

[¶1] Norkot Manufacturing, Inc., Western Industries, Inc., and James Page (collectively, “Page”) appealed a district court memorandum and order granting a renewed motion for summary judgment dismissing Page’s legal malpractice claims against Mark V. Larson and the law firm of McGee, Hankla, Backes & Wheeler, P.C., (“McGee”).
(footnote: 0)  We conclude there are genuine issues of material fact precluding summary judgment, and we reverse and remand for further proceedings.

I

[¶2] This is the second appeal from a summary judgment dismissing Page’s legal malpractice claims against Larson and McGee on the ground they were barred by the statute of limitations.  
See
 
Larson v. Norkot Mfg., Inc.
, 2001 ND 103, ¶ 2, 627 N.W.2d 386.

[¶3] While a member of the McGee law firm, Larson represented Page in negotiating a business asset sale involving grinders and the right to manufacture grinders to Rexworks, Inc., and drafted an asset purchase agreement and other agreements, which were signed on February 2, 1993.  No indemnification provision protecting Page from liability for damage caused by Maxigrinders manufactured by Rexworks was included in the sale agreements.

[¶4] A Maxigrinder manufactured by Page and purchased from Rexworks by the City of Rapid City, South Dakota, caught fire and was destroyed.  Rapid City sued Rexworks.  In a third-party complaint, Rexworks sued Page as a third-party defendant, seeking indemnification or contribution for any damages for which Rexworks might be found liable to Rapid City.  That complaint was served upon Page’s agent on January 8, 1996.  On February 21, 1996, Page’s attorneys filed an answer, counterclaim, and crossclaim seeking indemnity or contribution in the South Dakota suit.  
Larson
, 2001 ND 103, ¶ 11, 627 N.W.2d 386.  A Texas company that purchased from Rexworks a Maxigrinder manufactured by Rexworks sued Rexworks in Texas for damages caused when the Maxigrinder caught fire.  Rexworks served Page with a third-party complaint in April 1996.

[¶5] On June 26, 1996, Page and Rexworks agreed Rexworks would pay a reduced amount to Page as full payment for all amounts due under the 1993 agreements; Page would indemnify Rexworks for claims arising out of products manufactured by Norkot and sold by Rexworks (specifically including the machine involved in the South Dakota litigation); and Rexworks would indemnify Page for losses arising out of machines manufactured by Rexworks (specifically including the machine involved in the Texas litigation).

[¶6] Larson and Page became involved in litigation in 1998:

Larson sued Page on January 12, 1998, to recover unpaid legal fees.  On February 6, 1998, Page answered and counterclaimed for legal malpractice for failing to include in the sale contracts with Rexworks “any provision in the contract to protect Norkot and Page from liability to parties who may be injured, physically or financially, as a consequence of the use of any of the assets transferred from Norkot to Rexworks.”

Id.
 at ¶ 4.  Page alleged he entered into an indemnity agreement with Rexworks on June 26, 1996, and “lost $379,316 plus other damages caused by Larson’s and McGee’s legal malpractice.”  Page asserted the same malpractice claim against McGee in a third-party complaint.

[¶7] The trial court granted motions by Larson and McGee for dismissal of Page’s legal malpractice claims on the ground they were barred by the statute of limitations.  Page appealed.  We concluded there was “a genuine issue of material fact precluding summary judgment on the question of when Page knew, or with reasonable diligence should have known, of the injury, its cause, and the defendants’ possible negligence.”  
Id.
 at ¶ 13.  We affirmed the dismissal of Larson’s claim against Page, reversed the remainder of the judgment, and remanded for further proceedings.

[¶8] After further discovery, McGee renewed its motion for summary judgment and Larson joined in the renewed motion.  The district court ordered that Page’s legal malpractice claims be dismissed, explaining:

This Court finds that the statute of limitations commenced to run when Page received the South Dakota third party complaint on January 9, 1996.  The complaint should have placed a reasonable person on notice of a potential claim of legal malpractice.  The issue of indemnification under the agreement would reasonabl[y] have been discussed between Mr. Page and his attorneys in preparing a defense.  Since the claims for legal malpractice were served more than two years after the accrual of [a legal] malpractice case on January 9, 1996, the Court concludes that Page’s claims are barred by the statute of limitations.

Judgment was entered accordingly and this appeal followed.

II

[¶9] In the earlier appeal, we reiterated when summary judgment may be rendered:

Under N.D.R.Civ.P. 56, summary judgment shall be rendered if there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law.   Summary judgment may be issued to dispose of a controversy without trial if either party is entitled to judgment as a matter of law, if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result.

Larson v. Norkot Mfg., Inc.
, 2001 ND 103, ¶ 7, 627 N.W.2d 386.

[¶10] In the earlier appeal, we also reiterated the elements necessary for a legal malpractice action and when a cause of action for legal malpractice accrues for a statute of limitations analysis:

The elements of a legal malpractice action for professional negligence are the existence of an attorney-client relationship, a duty by the attorney to the client, a breach of that duty by the attorney, and damages to the client proximately caused by the breach of that duty.  
Dan Nelson Constr., Inc. v. Nodland & Dickson
, 2000 ND 61, ¶ 14, 608 N.W.2d 267.  The two-year statute of limitations under N.D.C.C. § 28-01-18(3) applies to malpractice actions against attorneys.  
Binstock v. Tschider
, 374 N.W.2d 81, 84 (N.D. 1985).  “A cause of action for legal malpractice does not accrue, and the statute of limitations does not commence to run, until the client has incurred some damage.”  
Wall v. Lewis
, 366 N.W.2d 471, 473 (N.D. 1985).  We have adopted a discovery rule, which tolls the statute of limitations in malpractice actions until the plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant’s possible negligence.  
Jacobsen v. Haugen
, 529 N.W.2d 882, 885 (N.D. 1995).

Larson
, 2001 ND 103, ¶ 9, 627 N.W.2d 386.  
See also
 
Budd v. Nixen
, 491 P.2d 433, 438 (Cal. 1971) (“[T]he cause of action in tort does not accrue until the client both sustains damage, and discovers, or should discover, his cause of action.”).  Thus, (1) for one to have a cause of action for an attorney’s legal malpractice, there must be damages to the client proximately caused by the attorney’s breach of a duty to the client; (2) the statute of limitations does not begin to run until the client has incurred some damage from the alleged malpractice; and (3) the statute of limitations is tolled until the client knows, or with reasonable diligence should know, of the injury, its cause, and the defendant attorney’s possible negligence.  
Larson
, at ¶ 9.  “‘Any appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action upon which the client may sue.’”  
Wall v. Lewis
, 366 N.W.2d 471, 473 (N.D. 1985), quoting 
Budd v. Nixen
, 491 P.2d 433, 436 (Cal. 1971).

[¶11] In the first appeal, the parties focused on when Page had knowledge of the January, 1996 action in South Dakota.  We reversed, stating “there is a genuine issue of material fact precluding summary judgment on the question of when Page knew, or with reasonable diligence should have known, of the injury, its cause, and the defendants’ possible negligence.”  
Larson
, 2001 ND 103, ¶ 13, 627 N.W.2d 386.

[¶12] Again in this appeal, the parties have focused their attention, and that of the trial court, on the question of when Page knew, or with reasonable diligence should have known, of his injury, its cause, and his attorneys’ possible negligence.  But, the parties have not focused their attention, or that of the trial court, on the question when Page sustained damages as a result of his attorneys’ negligence, if any.  Certainly, if Page lost $379,316 under his June 26, 1996, agreement with Rexworks as a result of his attorneys’ negligence, he sustained damages at that time.  He may also have sustained damages before that if he incurred or paid attorney fees necessitated by his attorneys’ negligence.  As the court observed in 
Budd v. Nixen
, 491 P.2d 433, 437 (Cal. 1971): “If the facts show that defendant’s negligence caused plaintiff to incur or pay [attorney] fees on or before September 11, 1965, two years prior to the institution of the present suit, then plaintiff’s action in tort would now be barred by the statute of limitations.”  
See also
 
Sirott v. Latts
, 8 Cal.Rptr.2d 206, 209 (Cal. Ct. App. 1992) (“A client suffers damage when he is compelled, as a result of the attorney’s error, to incur or pay attorney fees.”); 
Lucey v. Law Offices of Pretzel & Stouffer, Chartered
, 703 N.E.2d 473, 478 (App. Ct. Ill. 1998) (Incurring additional attorney fees may trigger the running of the statute of limitations if the fees are directly attributable to former counsel’s neglect.).

[¶13] Page may have incurred attorney fees in connection with Larson’s asserted negligence when he answered the third-party complaint in the Texas litigation in May 1996, or when he was served process in that litigation in April 1996.  Page may have incurred or paid attorney fees even earlier.  But, in answers to interrogatories, Page said, “I have never had any conversations or correspondence or anything else with any attorneys between January 8, 1996 and February 19, 1996 involving the conduct of Mark Larson or the McGee Law Firm concerning the Asset Purchase Agreement between Norkot/Page and Rexworks dated February 2, 1993.”  In a September 27, 2001, affidavit, Page’s attorney in the South Dakota litigation averred he had no 1996 communications with Page, Page’s North Dakota attorney, or anyone else “about the subject matter of any claimed legal malpractice or potential malpractice claim, or about any factual basis supporting any such claim or potential claim, against Mark Larson [or] the McGee Hankla law firm.”

[¶14] We conclude there are genuine issues of material fact as to when Page suffered damages as a result of Larson’s or McGee’s negligence, if any, and as to when Page knew or with reasonable diligence should have known, of his injury, its cause, and the defendant attorneys’ possible negligence.

[¶15] The judgment is reversed and the matter is remanded for trial.

[¶16] Gerald W. VandeWalle, C.J.

William F. Hodny, S.J.

[¶17] The Honorable William F. Hodny, S.J., sitting in place of Neumann, J., disqualified.

Maring, Justice, concurring specially.

[¶18] This appeal requires our Court to decide when the statute of limitations begins to run in a legal malpractice action.  I concur specially because I am of the opinion that legally cognizable damages must have occurred before the statute of limitations begins to run and not merely nominal damages.  I also am of the opinion the damages must be caused by the negligence of the attorney, here allegedly, the attorney’s failure to include an indemnification provision in the asset purchase agreement.

[¶19] In 1992 and 1993, Mark Larson, an attorney at the time with the law firm of McGee, Hankla, Backes & Wheeler, P.C. (“McGee”) represented James Page (“Page”) and Norkot Manufacturing, Inc. (“Norkot”) in negotiations with Rexworks, Inc. (“Rexworks”) for the purchase of all intangible and tangible assets owned by Page, who was the sole shareholder of Norkot.  The negotiations resulted in an asset purchase agreement between Norkot and Page, as seller, and Rexworks, as purchaser, on February 2, 1993.  Section 14.01 of the agreement provided that Norkot and Page were jointly and severally liable to Rexworks for indemnification of claims made by a third party for damages caused by maxigrinders manufactured by Norkot prior to the closing date of the asset purchase agreement.  The asset purchase agreement, however, did not contain an indemnification provision indemnifying Norkot and Page for all claims arising out of the manufacture of maxigrinders by Rexworks after the closing date of the asset purchase agreement.

[¶20] Rexworks served a third-party complaint dated January 2, 1996, on Norkot alleging that Norkot designed and manufactured a maxigrinder purchased by Rexworks for resale, which was the subject of a suit brought by the City of Rapid City against Rexworks and alleging Rexworks was entitled to indemnity from Norkot for any damages sustained by Rapid City because of the maxigrinder.  Norkot in its counterclaim against Rexworks dated February 20, 1996, claimed it was entitled “to indemnity and/or contribution from Rexworks and/or Carlson, and Plaintiff City of Rapid City’s damages, if any, were solely caused by Rexworks and/or Carlson.”  This case was venued in South Dakota (“the South Dakota case”).

[¶21] Subsequently, Texas Dirt Works (“the Texas case”) sued Rexworks in Texas for damages it claimed resulted from a maxigrinder manufactured by Rexworks.  Rexworks served a third-party petition on Norkot on April 20, 1996.  Norkot served an answer to Rexworks’ third-party petition which was dated May 10, 1996, generally denying all allegations.

[¶22] On June 26, 1996, Norkot and Page entered into a prepayment agreement with Rexworks.  Under the agreement, Rexworks agreed to pay Page $860,000 as full payment for all amounts due under the purchase agreement and the consulting agreement.  In addition, Page and Norkot agreed to jointly and severally indemnify and hold harmless Rexworks relating to any product manufactured by Norkot and sold by Rexworks.  This indemnification applied specifically to the defense of the South Dakota action.  Rexworks agreed to indemnify and hold harmless Norkot and Page against any claim relating to maxigrinders manufactured by Rexworks subsequent to the date of the closing of the purchase agreement.  This specifically applied to the Texas Dirt Works lawsuit.  Page alleged that this agreement resulted in his foregoing $379,318 that he was owed under the original purchase agreement and consulting agreement.

[¶23] On June 5, 1998, a verdict was rendered in favor of Norkot and Rexworks in the South Dakota case.

[¶24] On January 12, 1998, Mark Larson sued Norkot and Page for legal services provided to Norkot and Page while Larson was an employee of McGee.  On February 6, 1998, Norkot and Page served by mail an answer and counterclaim alleging Larson “failed to include any provision in the contract to protect Norkot and Page from liability to parties who may be injured, physically or financially, as a consequence of the use of any of the assets transferred from Norkot to Rexworks.”  Norkot and Page also served a third-party complaint on February 9, 1998, on McGee alleging the same legal malpractice.

[¶25] Third-party defendant, McGee, brought a motion for summary judgment dated July 13, 2000, based on the statute of limitations.  In its brief in support of the motion for summary judgment, McGee took the position that the two-year statute of limitations began to run when Page read, signed, and received copies of the sales contracts between Rexworks and Page/Norkot in February 1993.  In the alternative, McGee took the position that if the statute of limitations did not start to run in February 1993, it began to run in January 1996, when Norkot was sued by Rexworks in the South Dakota case.  McGee contended that upon receiving Rexworks’ third-

party complaint in the South Dakota case, a reasonable person in Page’s position would have been placed on inquiry in regard to whether or not the purchase agreement prepared in 1993 required Rexworks to indemnify Page and Norkot.  It contended the actual outcome of the South Dakota litigation was not relevant and the importance of the South Dakota litigation was that it placed Page on notice of indemnification issues between Rexworks and Page.  McGee claimed that Page’s differentiation between the South Dakota litigation and the Texas litigation for statute of limitations purposes was “inscrutable.”  McGee, however, noted that Page ultimately concluded he had the obligation to assume responsibility for the South Dakota litigation under the terms of the 1993 purchase agreement and that Page was claiming that he had no such obligation for the Texas litigation and, therefore, had to negotiate the 1996 prepayment agreement with Rexworks in order to be freed from further exposure in the Texas litigation.  McGee relied also on a November 20, 1997, letter written to Larson claiming that it indicated an intention to sue Larson for damages in regard to the South Dakota lawsuit.  The letter from Page states: 

While we intended to handle a matter in South Dakota that we are defending against and then commence an action against you [Larson] and McGee we certainly can be enticed to file our action sooner than that.

By November 20, 1997, however, the Texas Dirt Works case had also been commenced and Rexworks had brought Norkot and Page in on a third-party petition.  In addition, the prepayment agreement, which settled the indemnification issues between Norkot and Rexworks, had been signed on June 26, 1996.

[¶26] Larson in his response to the motion for summary judgment dated July 28, 2000, joined McGee’s arguments.

[¶27] On July 28, 2000, all parties submitted a joint pretrial statement to the court which included a stipulation of facts.  Those stipulated undisputed facts included:

7.  Prior to Norkot, James Page, and Rexworks entering into the Prepayment Agreement, Rexworks had third-partied Norkot into two lawsuits.  One related to a maxigrinder unit that was destroyed in a fire in South Dakota.  Norkot was brought into this lawsuit as a third-party in January 1996, with Rexworks claiming indemnification pursuant to the Asset Purchase Agreement.  The second lawsuit was a lawsuit brought against Rexworks by Texas Dirt Works, Inc. in Texas.  Norkot was third partied into this lawsuit in April 1996, with Rexworks claiming indemnification for a faulty design.  The Prepayment Agreement provided Norkot and Page would be responsible for the South Dakota lawsuit, provided that Page’s maximum responsibility was $250,000.  Under the agreed-upon terms in the Asset Purchase Agreement, Norkot and Page now acknowledge that this lawsuit would have been their responsibility even without the Prepayment Agreement.  The Prepayment Agreement further provided that the third party action brought in Texas would be the responsibility of Rexworks, and that Rexworks would indemnify Norkot and Page for any future lawsuits that might be brought against them, if any, on account of the units manufactured by Rexworks on account of units manufactured after February 2, 1993.

[¶28] It is clear that at the time the counterclaim and third-party complaint were served alleging legal malpractice that the alleged malpractice was a failure to include an indemnification clause to protect Norkot and Page from liability for maxigrinders manufactured by Rexworks.  As a result of the failure to include this indemnification clause, Norkot and Page purchased indemnification for claims arising out of maxigrinders manufactured by Rexworks by foregoing the sum of $379,318 in the settlement prepayment agreement of June 26, 1996.

[¶29] On appeal in 
Larson I
, Norkot and Page argued in their brief on appeal that “it was in the Texas Dirt Works case where, 
for the very first time
, that any liability for maxigrinders manufactured by Rexworks manifested itself,” and “this Texas case involved for the first time an issue concerning a maxigrinder manufactured by Rexworks in which Rexworks contended that Norkot and Page were liable for damages caused by a maxigrinder manufactured by Rexworks after the February 2, 1993.”  Norkot and Page have continually asserted it was the failure to include an indemnification clause to protect Norkot and Page that is the alleged legal malpractice against Larson and McGee.  In its brief on the first appeal, Norkot and Page also argued “Page did not discover any damages caused by Larson’s malpractice until after April 20, 1996 when Page signed the return receipt on the third-party petition by Rexworks in the Texas Dirt Works case.”  Page also asserted:  “The first time Page actually discovered his damages of $379,318 (appendix citation omitted) that were caused by Larson’s negligence was when Page signed the settlement agreement with Rexworks on June 26, 1996 relative to the Texas Dirt Works case (appendix citation omitted).”  Page and Norkot took the position that the statute of limitations could not start running until Page and Norkot had sustained damages.

[¶30] In determining when the statute of limitations begins to run on a legal malpractice claim, courts have applied different rules:

The general rule that the statute of limitations begins to run against a cause of action only after the right to prosecute such cause of action to a successful conclusion has accrued applies to an action against an attorney for malpractice. . . . 

Some cases hold that a cause of action against an attorney for malpractice accrues from the time the client has sustained damages. . . .

In some cases, the statute of limitations does not begin to run until the plaintiff knows or should know of the attorney’s negligence and the plaintiff suffers actual and appreciable harm.

7 Am. Jur. 2d 
Attorneys at Law
 § 241 (1997).

Under the view that the statute of limitations on a legal malpractice action does not begin to run until the plaintiff knows or should know of the attorney’s negligence and the plaintiff suffers actual and appreciable harm, the statute is tolled during the time the plaintiff has not sustained actual injury.

7 Am. Jur. 2d 
Attorney at Law
 § 243 (1997).

[¶31] This Court adopted the following rule regarding the time at which a cause of action accrues for the purposes of section 28-01-18(3), N.D.C.C.:

the best rule is that the limitation period commences to run against a malpractice action from the time the act of malpractice with resulting  injury is, or by reasonable diligence could be, discovered.

Johnson v. Haugland
, 303 N.W.2d 533, 539 (N.D. 1981) (quoting 
Iverson v. Lancaster
, 158 N.W.2d 507, 510 (N.D. 1968)).  “The elements of a legal malpractice action for professional negligence are the existence of an attorney-client relationship, a duty by the attorney to the client, a breach of that duty by the attorney, and damages to the client proximately caused by the breach of that duty.”  
Larson v. Norkot Mfg., Inc.
, 2001 ND 103, ¶ 9, 627 N.W.2d 386 (citing 
Dan Nelson Constr., Inc. v. Nodland & Dickson
, 2000 ND 61, ¶ 14, 608 N.W.2d 267).  Our Court has addressed the issue of when the injury occurred in a legal malpractice action in several cases.

[¶32] 
Binstock v. Tschider
 involved a malpractice action based on the attorney’s erroneous inclusion of an option to purchase in land sale transaction documents.  Our Court determined that the earliest date which it could be said that the Binstocks were injured was when the option was created, “thereby giving Kilzer the right to purchase the property.  The option was an encumbrance that reduced the value of the property, limited the right of disposition, and prevented Binstock or Terry Binstock from making further improvements to the property because of their fear that they would loose their investments in improvements.”  374 N.W.2d 81, 85 (N.D. 1985).  In reaching this decision, our Court stated:

In determining when an action for legal malpractice is barred by the passage of time, we recently said in 
Wall v. Lewis
, 366 N.W.2d 471, 473 (N.D. 1985):

The two-year statute of limitations under Section 28-01-18(3), NDCC, is applicable to an action brought against an attorney for professional malpractice.  
Johnson v. Haugland
, 303 N.W.2d 533 (N.D. 1981).  The statute commences to run when, “plaintiff knows, or with reasonable diligence should know, (1) of the injury, (2) its cause, and (3) defendant’s possible negligence.”  
Phillips Fur and Wool Co. v. Bailey
, 340 N.W.2d 448, 449 (N.D. 1983).

. . . 

A cause of action for legal malpractice does not accrue, and the statute of limitations does not commence to run, until the client has incurred some damage
.  (Citations omitted.)  The proposition is succinctly stated by the California Supreme Court in 
Budd v. Nixen
, 491 P.2d 433 (1971):

. . . until the client suffers appreciable harm as a consequence of his attorney’s negligence, the client cannot establish a cause of action for malpractice . . .

The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney’s negligence. . . .  Any appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action upon which the client may sue.

Id.
 at 84 (emphasis added).

[¶33]
 Wall v. Lewis
, 366 N.W.2d 471 (N.D. 1985), involved doctors’ malpractice actions against an attorney, who was retained to prepare trust agreements sheltering them from personal tax liability on the partnership income.  The doctors asserted that as a result of the attorney’s negligent preparation of the trust agreements they incurred personal tax liability on their medical partnership income.  The trial court struck the attorney’s statute of limitations defense, concluding as a matter of law, the doctors had commenced a timely action because there was no injury incurred and consequently no actionable claim until the federal district court issued its summary judgment in favor of the IRS on December 9, 1981.  Our Court stated:

. . . until the client suffers an appreciable harm as a consequence of his attorney’s negligence, the client cannot establish a cause of action for malpractice.  Prosser states the proposition succinctly, “It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.”  (Prosser, 
Law of Torts
 (4th ed. 1971), § 30 at p. 144.)

. . . 

Indeed, once having discovered his attorney’s negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney’s conduct.  [Footnote omitted.]

Wall I
, 366 N.W.2d at 473 (quoting 
Budd
, 491 P.2d at 436-37).  We concluded: “Where, as in this case, the attorney’s act of negligence has allegedly caused the client to incur additional tax liability, actual damage has been incurred no later than when the IRS has imposed a tax assessment thereby creating an enforceable obligation against the client.”  
Id.
 at 473 (citations omitted).  We then concluded that although the doctors sustained their injury at least by September 29, 1977, which was the date the IRS issued its tax deficiency notices, and which was more than two years prior to the time that the doctors filed their malpractice actions against the attorney, “the statute of limitations did not commence to run until, in addition to sustaining actionable injury, the Doctors knew, or with reasonable diligence should have known, of the injury, of its cause, and of Lewis’ possible negligence.”  
Id.
 at 474.  We reversed and remanded concluding that “[w]hen the Doctors should have discovered Lewis’ possible negligence is a question of fact to be determined at a trial on the merits.”  
Id.

[¶34] In 
Jacobsen v. Haugen
, 529 N.W.2d 882 (N.D. 1995), the Jacobsens brought a malpractice legal action against their former attorney, Jean Haugen.  The trial court granted the attorney’s motion for judgment as a matter of law.  A bank sued the Jacobsens in 1987 to recover on various notes and personal guarantees.  The Jacobsens were represented by Haugen, and the trial court granted the bank’s motion for summary judgment on January 18, 1988, and judgment was entered on January 21, 1988.  The Jacobsens engaged other counsel to appeal the summary judgment entered against them.  On appeal, our Court concluded the Jacobsens could not raise defenses that had not been raised at the trial court.  Our decision was issued on November 8, 1988.  The Jacobsens commenced their legal malpractice action against Haugen on September 25, 1990.  At the trial of the malpractice action, the trial court concluded that, as a matter of law, there was no legally sufficient basis for a damage award because the Jacobsens had paid nothing on the judgment against them and because the Jacobsens were aware in January 1988 of Haugen’s negligence.  Therefore, the statute of limitations had run before the action was commenced.  The Jacobsens argued that entry of an adverse judgment is sufficient injury for a malpractice action whether or not anything had been paid on the judgment.  Our Court agreed stating: 

We, however, agree with the judgment rule announced in decisions holding that one against whom a judgment has been entered should be able to sue for relief, even if the judgment has not been paid, (citations omitted) . . . Such cases are also consistent with prior decisions of this court in legal malpractice cases.  
See, e.g.
, 
Wall v. Lewis
, 366 N.W.2d 471, 473 (N.D. 1985) (“Where . . . the attorney’s act of negligence has allegedly caused the client to incur additional tax liability, actual damage has been incurred no later than when the IRS has imposed a tax assessment thereby creating an enforceable obligation against the client.”); 
Binstock v. Tschider
, 374 N.W.2d 81 (N.D. 1985) (injury occurred upon creation of an unauthorized option to purchase land, which reduced the value of the property, limited the right of disposition, and prevented further improvements to the property, rather than when the option was exercised).

We conclude that entry of a money judgment against the Jacobsens was sufficient injury to sustain a legal malpractice action (although it does not necessarily define the measure of damages).

. . .

[T]he statute of limitations begins to run when the cause of action accrues. . . .  It is the conjunction of damage and wrongful act that creates a cause of action for tort or contract.

Id.
 at 884-85 (quoting 
Keller v. Clark Equip. Co.
, 474 F. Supp. 966, 969 (D.N.D. 1979), 
aff’d
, 715 F.2d 1280 (8th Cir. 1983), 
cert. denied
, 464 U.S. 1044 (1984)).  We concluded, applying the discovery rule to the circumstances presented, that the cause of action accrued when the judgment was entered against them on January 21, 1988, when the Jacobsens knew of their injury, its cause, and Haugen’s possible negligence.  
Id.
 at 885.

[¶35] In 
Wall v. Lewis
, 393 N.W.2d 758 (N.D. 1986), we noted that in the first appeal, 
Wall I
, we were presented with the question of when the doctors had incurred damage and we concluded it was the date the IRS issued its tax deficiency notices.  We then remanded for a determination of when the statute of limitations began to run under the discovery rule.  In 
Wall I
, we noted that “the focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists” and that “the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion.”  
Wall II
, at 761.  On remand, depositions were taken and from the undisputed testimony it was clear that in October of 1977 attorney, Douglas Christensen, suggested the possibility of a malpractice action against Lewis.  
Id.

[¶36] Other jurisdictions have followed the rule that the statute of limitations on a legal malpractice action does not begin to run until the plaintiff knows or should know of the attorney’s negligence and the plaintiff suffers actual and appreciable harm.  
See
 Francis M. Dougherty, J.D., Annotation, 
When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice
, 32 A.L.R. 4th 260, §§ 6 and 8 (1984 & Supp. 2001).

[¶37] The New Jersey Supreme Court has held:

Therefore, we conclude that the discovery rule applies in legal-

malpractice actions:  the statute of limitations begins to run only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim.

Grunwald v. Bronkesh
, 621 A.2d 459, 494 (N.J. 1993) (citing several other states that have followed this approach).

[¶38] The rationale for requiring actual damage before the statute of limitations for legal malpractice commences is persuasive.  The analysis first asks:  When does a cause of action for malpractice accrue?  To establish a cause of action in a typical tort case, the plaintiff must prove tortious conduct, injury and proximate cause.  A prima facie case of legal malpractice consists of the existence of an attorney-client relationship, a duty owed by the attorney to the client, breach of that duty, and damages to the client proximately caused by the attorney’s breach of that duty.  
Larson v. Norkot Mfg., Inc.
, 2001 ND 103, ¶ 9, 627 N.W.2d 386.  The critical elements are negligence and damage.  The plaintiff has no cause of action in tort if the allegedly negligent conduct does not cause damage.  The California Supreme Court explained:  “If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.]  The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.]  Hence, until the client suffers appreciable harm as a consequence of his attorney’s negligence, the client cannot establish a cause of action for malpractice.”  
Sirott v. Latts
, 8 Cal. Rptr. 2d 206, 209 (Cal. App. 2nd Dist. 1992) (quoting 
Budd
, 491 P.2d at 436).

[¶39] We have applied the discovery rule in legal malpractice actions and held that it tolls the statute of limitations in such actions until “the plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant’s possible negligence.”  
Larson
, 2001 ND 103, ¶ 9, 627 N.W.2d 386.  We have specifically required that, until the client has incurred some damage, the action for legal malpractice does not accrue and the statute of limitations does not commence to run.  
Wall I
, 366 N.W.2d at 473 (quoting and citing to the California Supreme Court in 
Budd
, 491 P.2d at 436).  If we were to merely apply the discovery rule without the prerequisite of legally ascertainable damages, we would undermine our well-established principles that (1) damages are an essential element of a legal malpractice action and (2) the discovery rule mandates both an injury and negligence.  Just establishing negligence is not enough.  A statute of limitations cannot commence to run before the injury has occurred.  If the element of damages is not plead or established, a cause of action for malpractice is not actionable and is subject to dismissal.

[¶40] In the present case, the alleged malpractice is the failure to include an indemnification clause in the purchase agreement to protect Norkot and Page from liability for damages caused by maxigrinders manufactured by Rexworks after the closing date.  Larson and McGee contend that once the third-party complaint was served on Norkot and Page in the South Dakota case, Norkot and Page had notice of the lack of indemnification provisions in the purchase agreement and, thereupon, the statute of limitations commenced running.  However, at that point in time, no injury or damage had yet been sustained by Norkot and Page as a result of the alleged legal negligence.  The third-party complaint served in the South Dakota case clearly alleged that the maxigrinder involved had been manufactured by Norkot.  It is also clear, under the terms of the purchase agreement, Norkot and Page agreed to indemnify and hold harmless Rexworks for all claims arising out of the maxigrinders manufactured by Norkot and transferred to Rexworks at the closing date.  The record reveals there were only three such maxigrinders.  In addition, Norkot and Page in the prepayment settlement agreement dated June 26, 1996, acknowledged Rexworks’ right of indemnification in the South Dakota case and assumed the defense of that action.  The South Dakota action was ultimately resolved by a verdict on June 5, 1998, in favor of Norkot and Rexworks.  The inclusion of an indemnification provision requiring Norkot and Page to indemnify and hold harmless Rexworks for maxigrinders manufactured by Norkot prior to the closing date of the purchase agreement was not the legal negligence claimed by Norkot and Page against Larson and McGee.  It is interesting that Larson and McGee insist that there exists a potential claim for legal malpractice against them because they included the indemnity agreement provisions of section 14.01, et seq., in the purchase agreement and insist on framing Page’s action for him.

[¶41] Even if Norkot and Page’s cause of action against Larson and McGee could be construed to include any claim for malpractice for including section 14.01, et seq., in the purchase agreement, the only injury or damage which Norkot or Page could claim as a result would be their attorney’s fees and costs incurred in defending the South Dakota action.  A verdict in favor of Norkot, Page, and Rexworks was ultimately entered in the South Dakota case.  Assuming arguendo, that Page’s cause of action against Larson and McGee includes a claim for including the indemnification provisions, injury did not occur until February 20, 1996, when Page filed his answer and counterclaim to the third-party complaint in the South Dakota case.  It would be at that point Page would have incurred attorney’s fees that would be significant and not merely nominal.  We do not know from this record if at any point from the initial contact to the filing of the answer, the fees became significant.  
See
 
Sirott
, 8 Cal. Rptr. 2d at 209 (holding plaintiff incurred attorney’s fees not later than when his counsel filed a demurrer on his behalf); 
see also
 
Grunwald
, 621 A.2d at 465 (holding “actual damages are those that are real and substantial as opposed to speculative”).  Accordingly, that claim of legal malpractice would not be barred by the statute of limitations.

[¶42] However, Norkot and Page allege a very different  claim of malpractice, which is the 
failure
 of Larson and McGee 
to include
 in the purchase agreement indemnification for Norkot and Page for all claims arising out of the sale of maxigrinders manufactured by Rexworks after the close date of the purchase agreement.  After Page received a copy of the third-party complaint in the South Dakota case on January 9, 1996, Page may have known, upon consulting with his attorneys, the status of the indemnification provisions in the purchase agreement and of Larson’s negligence.  However, the statute of limitations on this claim of malpractice, failure to include an indemnification provision protecting Norkot and Page for claims based on maxigrinders manufactured by Rexworks after the closing date, would not have begun to run either on January 9, 1996, or on February 20, 1996, because Norkot and Page had not sustained any injury or damage as a result of that negligence yet.

[¶43] The New Jersey Supreme Court has held: 

Legally-cognizable damages occur when a plaintiff detrimentally relies on the negligent advice of an attorney.  (Citation omitted.)  Actual damages are those that are real and substantial as opposed to speculative.  (Citation omitted.)  In the legal-malpractice context, actual damages may exist in the form of an adverse judgment.  (Citation omitted.)  However, a client may suffer damages, in the form of attorney’s fees, before a court has announced its decision in the underlying action.  (Citation omitted.)

Grunwald
, 621 A.2d at 464-65.

[¶44] In 
Sirott v. Latts
, 8 Cal. Rptr. 2d 206 (Cal. App. 2nd Dist. 1992), the Court of Appeal of California was presented with the issue of when the client suffered actual injury from the attorney’s alleged negligence.  The facts of the case are similar in many respects to the facts of the present case.  In 
Sirott
, the doctor-client decided to retire from the practice of medicine and sought advice from the attorney-defendant regarding the purchase of “tail” coverage for medical malpractice.  The attorneys advised the doctor that the doctor need not pay the premium.  Subsequently, the doctor  was sued for medical malpractice.  The doctor alleged that had he purchased the insurance which was the subject of the legal advice given by the attorneys, he would have had full coverage for both the defense and any damages assessed against him in the medial malpractice action.  The attorneys attempted, without success, to reinstate the doctor’s tail coverage.  The doctor was required to retain counsel to defend the medical malpractice action at his own expense.  On January 11, 1990, the doctor paid the sum of $230,000 to settle the medical malpractice action.  The doctor claimed that as a result of the attorney’s negligence he sustained damages of $230,000.  The insurer commenced an arbitration proceeding against the doctor, and a response was filed on behalf of the doctor on January 20, 1987.  In the arbitration proceeding, an award was rendered concluding the doctor was not entitled to rescind his decision with regard to his tail coverage and that the insurer had no obligation to defend or indemnify the doctor in the medical malpractice action.  Judgment was entered confirming the arbitration award on January 7, 1988.  It should be noted that the California Code of Civil Procedure provides that the discovery rule applies, but that the statute of limitations is tolled during the time that the plaintiff has not sustained actual injury.  Cal. Code Civ. Proc. § 340.6 (2001); 
Sirott
, 8 Cal. Rptr. 2d at 209 n.2.  The Court of Appeal of California concluded the doctor suffered damage when he incurred attorney’s fees in defending the medical malpractice action not later than January 20, 1987, when his attorney filed a response on his behalf.  
Id.
 at 209.  The court stated: “[a] client suffers damage when he is compelled, as a result of the attorney’s error, to incur or pay attorney fees.”  
Id.
 (citing 
Budd
, 491 P.2d at 436).  The Court of Appeal of California also concluded the doctor sustained actual damage upon entry of the judgment confirming  the arbitration award on January 7, 1988.  It was at that point that it was judicially determined that the doctor was not entitled to tail malpractice insurance coverage and he was compelled to pay the expenses of defending the medical malpractice action.  In addition, the court determined that the fact that the doctor suffered additional damage from the attorney’s negligence when he paid $230,000 to settle the medical malpractice action on January 11, 1990, did not change the result because “[a]ny appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action upon which the client may sue.”  
Id.
 at 210.  The court ultimately concluded that the statute of limitations for the legal malpractice commenced to run on January 7, 1988, the date the judgment was entered confirming the arbitration award.

[¶45] In the present case, the element of damage resulting from the alleged legal malpractice, failure to include an indemnification provision protecting Norkot and Page from claims arising out of Rexworks manufacturing of maxigrinders after the purchase agreement close date, remained speculative and remote until the third-party petition in the Texas Dirt Works case was received by Page on April 20, 1996.  At that point in time, Norkot and Page knew or should have known of the failure of Larson to include an indemnification provision in the purchase agreement covering the allegations made by Rexworks against Norkot and Page in the third-party petition.  The actual injury to Norkot and Page, however, occurred on May 10, 1996, the date of Page’s answer to the third-party petition.  Again, the record does not reflect if significant attorney fees were incurred before the service of the answer.  Norkot and Page’s counterclaim and third-party complaint for legal malpractice, served February 6, 1998, and February 9, 1998, respectively, would not be barred by the statute of limitations if it commenced to run on that date.  Norkot and Page had to incur attorney’s fees and costs in defending against the third-party petition.  Substantial fees were incurred no later than when the answer to the third-party petition was filed in the Texas case.  Under the facts of this case, I am of the opinion that Norkot and Page suffered actual damage when they were compelled to incur attorney’s fees and costs to defend and answer this action.  The reason that they had to do so was the failure of Larson to include an indemnification and hold-harmless provision in the purchase agreement.  The very essence of an indemnification and hold-harmless agreement is to avoid attorney’s fees, costs of litigation, and ultimately, liability for a judgment of damages.  The necessity of incurring attorney’s fees and costs in defending the Texas lawsuit was directly a result of the alleged legal malpractice and, therefore, constituted legally-recoverable damages.  I am not of the opinion that incurring attorney’s fees will always satisfy the actual injury or damage requirement when analyzing when the statute of limitations begins to run in a legal malpractice case.  The injury may occur by the entry of an adverse judgment, by having to defend an action, by being compelled to enter a settlement agreement, or by incurring any other legally cognizable damages.  Damages, however, cannot be based on pure speculation.  A mere possibility, or even probability, that damages will result from wrongful conduct does not render that conduct actionable.

[¶46] Although Page was additionally damaged when he forwent $379,318 of the contract amount due to him, I am of the opinion that he already had sustained damages as of May 10, 1996, the date of Page and Norkot’s answer to the third-party petition in the Texas litigation.  It would have been on that date that substantial, not merely nominal, attorney’s fees would have been incurred in this case. 

[¶47] There are genuine issues of material fact about when legally cognizable damages occurred and when Page knew or should have known of Larson’s negligence.  Therefore, I concur in the reversal of the summary judgment and the remand to the trial court.

[¶48] Mary Muehlen Maring

Kapsner, Justice, dissenting.

[¶49] I respectfully dissent.  I would affirm the trial court’s grant of summary judgment.

[¶50] In 
Larson I
, we reversed a summary judgment, indicating:

[T]here is a genuine issue of material fact precluding summary judgment on the question of when Page knew, or with reasonable diligence should have known, of the injury, its cause, and the defendants’ possible negligence.  The focus of inquiry is when Page was “apprised of facts which would place a reasonable person on notice that a potential claim exist[ed].”  
Wall
, 393 N.W.2d at 761 [1986].  The ultimate question with regard to triggering the running of the statute of limitations is when did Page “know enough to be on notice of a potential claim” for legal malpractice.  
Schanilec
, 1999 ND 165, ¶ 19, 599 N.W.2d 253.

2001 ND 103, ¶ 13, 627 N.W.2d 386 (footnote omitted).  The additional evidence, received by the trial court after remand, makes dismissal appropriate as a matter of law because the statute of limitations had run.

[¶51] I take issue with the majority and concurring opinions on two matters.  First,  what is an injury for purposes of determining when the statute of limitations starts to run.  Second, whether there is evidence showing as a matter of law that Norkot and Page had sufficient information to be on notice of a potential malpractice claim more than two years before they filed their suit against Larson and the McGee Hankla law firm.

[¶52] The majority opinion reverses the judgment and remands for a determination of “when Page suffered damages” and “when Page knew or with reasonable diligence should have known of his injury.”  This language perpetuates the confusion created by the inartful and interchangeable use by this Court of the words “damages” and “injury,” a confusion in which I have participated.  
See
 
Dan Nelson Constr., Inc., v. Nodland & Dickson
, 2000 ND 61, ¶ 14, 608 N.W.2d 267.  We should take this opportunity to clarify that the focus of the injury/damages inquiry for purposes of the statute of limitations is the harm occasioned to the client, not the measure of that harm in the form of compensation which can be sought for the injury.

[¶53] The concurring opinion exacerbates the problem by suggesting that the necessary “damages” which must be shown are those that flow from the injury.  In paragraph 24, the concurrence states:  “the only injury or damage which Norkot or Page could claim as a result would be their attorney’s fees and costs incurred in defending the South Dakota action.”  In paragraph 25, the concurrence suggests that Norkot and Page did not sustain any injury or damages from the absence of the  indemnity agreement.  This statement confuses the existence of a legal injury with the amount of damages.  Further, the concurrence’s reliance on 
Sirott v. Latts
, 8 Cal. Rptr. 2d 206 (Cal. App. 2
nd
 Dist. 1992) has to be measured against the decision of the California Supreme Court in 
Jordache Enterprises, Inc., v. Brobeck, Phleger & Harrison
, 18 Cal.4th 739, 958 P.2d 1062 (1998), which calls into question  whether the 
Sirott
 decision is good law in a legal malpractice action.  
Jordache
 specifically dealt with the question: “When does a former client—having discovered the facts of its attorney’s malpractice—sustain actual injury so as to require commencement of an action against the attorneys within one year?” 18 Cal.4th at 747, 958 P.2d at 1068.

[¶54] California law on the statute of limitations in a malpractice action derives from 
Budd v. Nixen
, 6 Cal.3d 195, 491 P.2d 433 (1971), the case relied upon by this Court in 
Wall v. Lewis
, 366 N.W.2d 471 (N.D. 1985).  Following 
Budd,
 the California legislature enacted the statute that governs the commencement of the limitation period.  However, certain circumstances toll that period, including one in which the plaintiff has not sustained “actual injury.”  Cal. Code Civ. Proc. § 340.6.  In 
Jordache
, the California Supreme Court discussed the development of the concept of injury since the 
Budd
 decision.

[¶55] In 
Jordache,
 the California court noted that:

[T]he existence of appreciable actual injury does not depend on the plaintiff’s ability to attribute a quantifiable sum of money to consequential damages.  Similarly, 
Laird
 rejected the claims that actual injury should be defined by a monetary amount and that the limitations period should be tolled if the injury is, in some way, remediable. 
Adams
 recognized that actual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy.  “
When malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred.
”

18 Cal.4th at 750, 958 P.2d at 1070 (citations omitted)(emphasis added).

[¶56] The California court specifically rejected the notion suggested by the concurrence that the amount of damages must be decided by the ultimate resolution of the lawsuit imposing liability on the injured client.  
Jordache
, 18 Cal.4th at 752; 958 P.2d at 1071.  The California court interprets the actual injury requirement as whether the plaintiff has sustained any harm compensable in an action against the attorney for professional negligence, even though the amount of compensable damages might not yet be known.  “Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions.”  
Jordache
, 18 Cal.4th at 743, 958 P.2d at 1065.  
See
 
also
 
Samuels v. Mix
, 22 Cal.4th 1, 989 P.2d 701 (1999).

[¶57] We are not the only state to have expressed confusion about the use of “injury” and “damages.”  
See
 Ronald Mallen & Jeffrey Smith, 3 Legal Malpractice §§ 22.11-

22.12 (5th ed. 2000).  The author notes “the prevailing rule is that there only need be the fact of an injury rather than a specific quantity of damage, even if significant damages may not occur until the future, if at all.”

[¶58] I cannot agree with the concurrence’s assertion that our cases are contrary. The development of California law is compatible with the prior formulations of this Court, as quoted by the majority.   In 
Wall v. Lewis
, 366 N.W.2d 471, 473 (N.D. 1985), this Court did say:  “A cause of action for legal malpractice does not accrue, and the statute of limitations does not commence to run, until the client has incurred some damage.”  However, the Court went on to quote 
Budd v. Rixen
:

The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. . . .  Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct.

Wall
, at 473 (citations omitted).

[¶59] The Court in 
Wall
, at 473, held that the claimants had sufficient notice of their injury “no later than” the date the IRS issued its notice of assessment.  The Court stated in a footnote in 
Wall
, at 474, that whether the Doctors sustained actual damages prior to the deficiency assessment by the IRS is a question of fact to be determined at a trial on the merits, citing 
Budd
.

[¶60] In this case, appreciable harm can include the inability to seek indemnity based upon the attorney’s failure to include a provision for indemnity in the contract.  “The loss or diminution of a right or remedy constitutes injury or damage.  Neither uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate.”  
Jordache
, 18 Cal.4th at 744, 958 P.2d at 1066 (citation omitted).  The specific harm or injury asserted in this case is exposure to liability as a result of the contract drafted by the attorneys and that harm was appreciable or actual in January 1996 because demand had been made in that month on Page and Norkot.

[¶61] The second dispute I have with the majority and concurring opinion is the remand for determination of when Norkot and Page knew, or with reasonable diligence should have known, of their injury.  Norkot and Page served a malpractice action against Larson and the McGee Hankla law firm dated February 6, 1998, alleging:

When Larson and McGee prepared the Asset Purchase Agreement and the Consulting and Noncompetition Agreement between Rexworks and Norkot and Page, Larson and McGee failed to include any provision in the contract to protect Norkot and Page from liability to parties who may be injured, physically or financially, as a consequence of the use of any of the assets transferred from Norkot to Rexworks.

[¶62] In 
Duncklee v. Wills
, 542 N.W.2d 739, 742 (N.D. 1996), we said:

The statute of limitations for legal malpractice actions commences to run when the plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant’s possible negligence.  
Wall v. Lewis
, 393 N.W.2d 758 (N.D. 1986).  A malpractice plaintiff’s knowledge is ordinarily a question of fact, and summary judgment is rarely appropriate on the issue of when the plaintiff should have discovered there was a potential malpractice claim.  
Id.
, 393 N.W.2d at 762.

[¶63] Although a malpractice plaintiff’s knowledge is ordinarily a question of fact,  it becomes a question of law, if the evidence is such that reasonable minds could draw but one conclusion.  
Schanilec v. Grand Forks Clinic, Ltd.
, 1999 ND 165, ¶ 20, 599 N.W.2d 253.  This, after remand, is such a case.  In January 1996, Norkot and Page knew, or with reasonable diligence should have known, the contractual provisions did not include indemnification of Norkot and Page by Rexworks so as to render the complaint against Larson and McGee outside the two-year limitations provision.  In 
Larson I
, we stated:

We agree with the trial court that service upon Page of the third-party complaint in the South Dakota litigation "would have triggered discussions between Page and his attorneys about the indemnification provisions of the agreements." Such discussions reasonably should have provided Page with knowledge sufficient to trigger the running of the statute of limitations. Page's registered agent received the third-

party complaint in the South Dakota litigation on January 8, 1996. Page's attorneys prepared an answer and counterclaim seeking indemnity or contribution, which was dated February 20, 1996. The parties have not drawn our attention to any record evidence showing when Page was actually apprised of the third-party complaint in the South Dakota litigation or when Page discussed that litigation with attorneys in preparing to respond to the third-party complaint, to determine by what date between January 8, 1996, and February 20, 1996, "discussions between Page and his attorneys about the indemnification provisions of the agreements" should reasonably have taken place. Thus, the record is not clear whether the statute of limitations had run by the time Page served his counterclaim.

Larson v. Norkot Manufacturing
, 2001 ND 103, ¶ 12, 627 N.W.2d 386.

[¶64] The additional information which the trial court received after remand included the following:

1. On January 8, 1996, a third-party complaint was served on Max Rosenberg, the registered agent for Norkot, in the South Dakota action against Rexworks.

2. On January 8, 1996, Rosenberg sent the third-party complaint to Page.

3. On January 9, 1996, Page received the third-party complaint and sent it to his attorney Douglas Christensen.  In the letter from Page to Christensen, Page enclosed part of his agreement with Rexworks and requested the attorney to “Call me.”

4. On January 19, 1996, Page sent another letter to Christensen.  Page indicates in the letter he had read the contract with Rexworks.  The letter also states,  “As we discussed, I don’t believe rexworks is entitled to include me in this lawsuit, at least not from what I believed was the agreement in the contract with them.”

5. A few days later, Page received a certified letter from Rexworks dated January 19, 1996 notifying Page “of several claims for indemnification.”  The letter from Rexworks tendered defense of the South Dakota litigation to Norkot and notified Norkot of  other claims being made against Rexworks, including the claim in Texas.  Rexworks demanded indemnification from both Page and Norkot under the contract for both the South Dakota litigation and the claim in Texas.

6. On January 30, 1996, Christensen sent a letter to the attorney for Rexworks in the South Dakota litigation requesting an extension of time to answer the third-party complaint.

[¶65] The majority opinion in ¶ 13, focuses on the assertions made by Page that he had never had conversations with his attorneys about the alleged malpractice of Larson or the McGee Hankla law firm.  These assertions are irrelevant.  “In applying the discovery rule we have used an objective standard for the knowledge requirement; we focus upon whether the claimant has been appraised of facts which would place a reasonable person on notice that a potential claim exists, without regard to the claimant’s subjective beliefs.”  
BASF Corp. v. Symington
, 512 N.W.2d 692, 695 (N.D. 1994).  “The focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be subjectively convinced that he has been injured and that the injury was caused by the defendant’s negligence.”  
Schanilec
, 1999 ND 165, ¶ 13, 599 N.W.2d 253, citing 
Wheeler v. Schmid Laboratories, Inc.
, 451 N.W.2d 133 (N.D. 1990).

[¶66] If conversations with lawyers about malpractice were necessary, theoretically the statute of limitations might never begin to run.  Page asserts he had no specific conversations about malpractice.  However, on January 9, 1996, Page sent a copy of the Summons in the South Dakota litigation to his attorney Doug Christensen.  His letter states: 

I ENCLOSE A SUMMONS OR WHATEVER FROM REXWORKS, THE COMPANY I SOLD THE GRINDER PRODUCT LINE TO. NAMING NORKOT A THIRD PARTY DEFENDANT.  AS I READ THIS THING IT APPEARS THAT ONE OF THE GRINDERS NORKOT BUILT AND SOLD TO REXWORKS AS PART OF THE PACKAGE OF SELLING THE WHOLE PRODUCT LINE IN 1993, WAS SOLD TO CARLSON EQUIPMENT IN MINNEAPOLIS WHO THEN SOLD IT TO THE CITY OF RAPID CITY SOUTH DAKOTA.

IT EVIDENTLY CAUGHT FIRE AND BURNED AND NOW THEY ARE SUING CARLSON, REXWORKS AND REXWORKS IS ENJOINGIN NORKOT. I GUESS WE HAVE TO ANSWER IT.

. . . .

FOR WHAT ITS WORTH I HAVE INCLUDED PART OF THE AGREEMENT I HAD WITH REXWORKS, AND HIGH LIGHTED SOME PARTS THAT MAY OR MAY NOT HAVE SOME RELAVENCE.

. . . .

I OF COURSE DENY THAT THEIR WAS ANY DESIGN FAULT BY NORKOT. WHAT WORRIES ME IS THAT REX IS GOING TO USE THIS AS A REASON NOT TO PAY ME ON FEB.2, THE ANNUAL 350 K PAYMENT, EVEN THOUGH THAT OBLIGATION IS TO ME PERSONALLY AND NOT NORKOT. 

CALL ME

[¶67] On January 19, 1996, in another letter to attorney Christensen, Page wrote:

As we discussed, I don’t believe rexworks is entitled to include me in this lawsuit, at least not from what I believed was the agreement in the contract with them. In fact rexworks own warranty as noted in the enclosures is the same as mine was.  That is I suppose a question some judge will have to determine.

Further to our conversation as I read my contract with rex, they cannot withhold unless a court of competent jurisdiction has found in their favor, a point which we will have a better feel for in the next two weeks..from rexworks standpoint they could almost encourage someone to file a suit simply in order to avoid paying me...and I note the payments are due me personally, and they have filed suit against norkot corp.

[¶68] On January 19, 1996, Rexworks sent a letter to Page notifying him as President of Norkot, of the following:

Pursuant to Article 14 of the Asset Purchase Agreement by and between Norkot Manufacturing Co., Inc., Rexworks Inc. and James Page, Rexworks is writing to notify you of several claims for indemnification.  As provided in section 14.01 of the Asset Purchase Agreement, Norkot and James Page are jointly and severally obligated to indemnify Rexworks for such indemnification claims.

. . . .

. . . .

As you know, several customers have alleged a design defect with respect to product safety and fire prevention.  You are now involved in a legal action regarding fire on a machine built by Norkot and shipped to the City of Rapid City.  Various other claims of defective design and manufacture are also being alleged by Rapid City.  These alleged problems are not confined to this location.  Litigation has commenced or is being threatened at Texas Dirt Works and the City of Plano, Texas.  Rexworks contends that Norkot knew of these problems and the resulting liabilities and did not disclose these problems to Rexworks.

[¶69] In January 1996, Page had specific written discussions with his attorney about the contract and whether Norkot could be included in suits under an indemnity claim.  In January 1996, Page knew that Rexworks was making claims for indemnity that include claims arising both in South Dakota and in Texas.

[¶70] If it was malpractice for Larson or the McGee Hankla law firm not to have included a provision in the contract for Rexworks to indemnify Norkot and Page, they were aware of its absence in January 1996.  Norkot and Page were aware, or should have been aware, of their exposure to the indemnity claims of Rexworks and their lack of a contractual remedy against Rexworks.

[¶71] As we said in 
Schanilec
, “[t]o trigger the running of the statute of limitations, 
Schanilec
 need not fully appreciate the potential liability or even be convinced of his injury; he need only know enough to be on notice of a potential claim.”  
Schanilec
, at ¶ 19.  Like the fact situation in 
Schanilec
, this case is one where reasonable minds can only draw the conclusion drawn by the trial court.  Looking at the specific claims of negligence made by Page and Norkot, quoted above, and  based upon the evidence in this record, when did Page and Norkot have sufficient knowledge of the potential claim for legal malpractice?  The trial court held that Page and Norkot had such knowledge on January 9, 1996, referring to the letter Page sent to Christensen on that date and on Page’s statement that “Mr. Christensen had a copy of the asset purchase agreement between Rexworks and him since early 1995 in connection with another case.”

[¶72] Under the undisputed evidence developed after remand, Page and Norkot knew, or with reasonable diligence should have known, that the contracts prepared by Larson contained no indemnity provisions protecting them.  By receipt of the letter of demand dated January 19, 1996, Norkot and Page knew they were subject to indemnity demands by Rexworks for claims in both South Dakota and Texas.

[¶73] If it was malpractice not to have included an indemnity provision, an action could have been brought by Norkot and Page against Larson and the McGee Hankla law firm asserting legal malpractice with the information known to them in January 1996,  even though the amount of the indemnity liability, if any, would not have been known.  Norkot and Page had sufficient information of their potential claim more than two years before they commenced the legal malpractice claim against Larson and the McGee Hankla law firm.  Therefore, § 28-01-18, N.D.C.C., bars the claim.  I would affirm.

[¶74] Carol Ronning Kapsner

Dale V. Sandstrom

FOOTNOTES
0:
1
As in 
Larson v. Norkot Mfg., Inc.
, 2001 ND 103, ¶ 1 n.1, 627 N.W.2d 386, “[w]e treat this as an appeal from the subsequently entered consistent judgment.”